The **TOWN OF EAST HAVEN, New Haven-Committee against Airport Expansion, East Haven-Committee against Airport Expansion, James Canali, N. Leo Corona, Michael Fusco, Michael Rascati, Salvatore Criscuolo, Jeremiah Camarota, Andrew Proto, Michael Criscuolo, Louis G. Audette, Alphonse G. Guidone, Leon Amendola, Leslie Munro and Earl W. Jones, Plaintiffs,**

v.

**EASTERN AIRLINES, INC., Allegheny Airlines, Inc., the Administrator of the Federal Aviation Agency and the City of New Haven, Defendants.**

Civ. No. 12175.

United States District Court
D. Connecticut.

Jan. 31, 1968.

William A. Blank, Brooklyn, N. Y., and Anthony V. DeMayo, of Cohen & DeMayo, New Haven, Conn., for plaintiffs.

J. Daniel Sagarin, Asst. U. S. Atty., New Haven, Conn. (Jon O. Newman, U. S. Atty., Hartford, Conn., on the

brief), and Martin J. White, Regional Counsel, Federal Aviation Administration, for defendant Administrator of the Federal Aviation Agency.

William R. Murphy (Louis M. Winer and Bruce Lewellyn, on the brief), of Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for defendants Eastern Airlines, Inc. and Allegheny Airlines, Inc.

Robert Matthew Beckman, Washington, D. C. (Thomas F. Keyes, Jr., Corp. Counsel and Roger J. Frechette, Asst. Corp. Counsel, New Haven, Conn., on the brief), for defendant City of New Haven.

TIMBERS, Chief Judge.

## NATURE OF ACTION AND RELIEF SOUGHT

This action arises out of commercial flight operations at Tweed-New Haven Airport (the airport). The airport is the municipal airport of the City of New Haven and is operated by New Haven through a Board of Airport Commissioners. However, a substantial portion of the land upon which the airport is located lies outside the city limits of New Haven and within the Town of East Haven. The Town of East Haven, together with various property owners in the vicinity of the airport and committees of these property owners, have brought this action to obtain relief from alleged injuries sustained from the recent introduction of prop-jet and pure jet commercial flights into and out of the airport. Plaintiffs in their original complaint named as defendants Eastern Airlines, Inc. (Eastern) and Allegheny Airlines, Inc. (Allegheny), the two commercial air passenger carriers responsible for jet operations at the airport, and the Administrator of the Federal Aviation Agency (Administrator). Subsequently, with leave of the Court, plaintiffs filed an amended complaint joining the City of New Haven as a defendant.

Generally, the amended complaint charges that jet operations at the airport so interfere with plaintiffs' enjoyment of their nearby property as to justify relief on theories of a taking without compensation, trespass and public and private nuisance. In addition, the complaint alleges that defendants Eastern and Allegheny have operated their aircraft negligently and in violation of FAA rules and regulations; and that the City of New Haven likewise has operated the airport and proceeded with its expansion in disregard of these rules and regulations and specifically in disregard of a grant agreement with the FAA. Finally, the complaint charges that the Administrator, in permitting the jet operations and airport expansion, has failed to enforce federal law, regulations, and the grant agreement as it is his duty to do. Plaintiffs seek an injunction against continuance of the allegedly improper activities and a mandamus compelling the Administrator to abate these activities as carried on by the other defendants. Plaintiffs also seek damages.

The Court now has before it for determination motions to dismiss by defendant Administrator, defendants Eastern and Allegheny, and defendant City of New Haven.* For reasons subsequently stated, the Administrator's motion is granted; the airlines' and City of New Haven's motions are denied.

## FAA ADMINISTRATOR'S MOTION TO DISMISS

The Administrator urges several grounds in support of his motion to dismiss. His first claim is that he is not properly subject to service of process in this action and, therefore, the Court lacks in personam jurisdiction. A further claim is that venue, insofar as the Administrator is a defendant, is not properly laid in this District. The Administrator also makes a substantive attack upon the complaint, charging that

---

* These motions were filed after two days of hearings on plaintiffs' motion for a preliminary injunction; the Court has had the benefit of these hearings in determining the instant motions.

the Court is without jurisdiction to grant the relief sought.

The validity of service and the propriety of venue may be dealt with simultaneously. Plaintiffs seek relief in the nature of mandamus against the Administrator. Prior to 1962, such relief, if available at all, was generally obtainable only from the District Court for the District of Columbia. There were several reasons for this. First, only the District Court for the District of Columbia had original jurisdiction to grant mandatory relief except as such relief was ancillary to jurisdiction otherwise obtained. See, e. g., Covington & Cincinnati Bridge Co. v. Hager, 203 U.S. 109 (1906); Rosenbaum v. Bauer, 120 U.S. 450 (1887); Kendall v. United States, 37 U.S. (12 Pet.) 524 (1838); McIntire v. Wood, 11 U.S. (7 Cranch) 504 (1813); Fagan v. Schroeder, 284 F.2d 666 (7 Cir. 1960); United States ex rel. Vassel v. Durning, 152 F.2d 455 (2 Cir. 1945); Palmer v. Walsh, 78 F.Supp. 64 (D.Or.1948). Second, the territorial restrictions upon service of process expressed in Rule 4(f), Fed.R.Civ.P., prevented effective service upon government officials having their public residence in the District of Columbia in actions commenced outside of that jurisdiction. See, e. g., Martinez v. Seaton, 285 F.2d 587 (10 Cir. 1961), cert. denied, 366 U.S. 946 (1961). Finally, the general venue rule that "a civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all the defendants reside, except as otherwise provided by law" (28 U.S.C. § 1391(b) (1964)) meant that actions had to be brought in the District of Columbia whenever the government official had his public residence there.

In order to remove these obstacles and "make it possible to bring actions against Government officials and agencies in U. S. district courts outside the District of Columbia", Congress in 1962 enacted 28 U.S.C. § 1361 (1964) and 28 U.S.C. § 1391(e) (1964). S.Rep.No. 1992, 87th Cong., 2d Sess. (1962); 1962 U.S. Code, Congressional and Administrative News 2784, 2785. Section 1361 confers upon all the district courts "orginal jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Section 1391(e) deals with the problems of venue and service of process by providing:

"(e) A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought."

Although plaintiffs assert that this Court has jurisdiction with respect to their complaint against the Administrator pursuant to 28 U.S.C. § 1361, they do not claim, nor can they claim, the benefits of 28 U.S.C. § 1391(e), because this latter section only applies in civil actions in which *each* defendant is a federal official or agency.

The legislative history of 28 U.S.C. § 1391(e) provides no explanation for the requirement that "each" defendant must be a government official or agency. See S.Rep.No. 1992, supra, at 2784–2790. The wording does prevent the hardship which could result if a non-government defendant were subjected to the provision's liberal service of process and venue rules merely because the government was

also joined as a defendant in the same action. But the wording does appear unnecessarily broad and without justification where there is independent authority for service of process and venue with respect to each non-government party joined as a defendant. The only possible argument in support of the requirement in such instances is that enough of a burden has been placed on government officials and agencies by subjecting them to suits away from their official residences without placing upon them the additional burden of defending a suit with non-government co-defendants. The weakness of this argument is evident. The burden, if it is one at all, cannot be a great one and certainly is minor in comparison to the burden placed on the plaintiff of having to bring separate actions. At any rate, there is no indication that Congress was acting to avoid this additional burden upon the government.

Nevertheless, the Court has no choice in view of the unambiguous wording of the statute but to find that plaintiffs are not entitled to its benefits. See Lewis v. United States, 92 U.S. 618, 621 (1875); United States v. Turner, 246 F.2d 228, 230 (2 Cir. 1957).

Without 28 U.S.C. § 1391(e), plaintiffs remain confronted with the service of process and venue problems previously mentioned. See Alfonso v. Hillsborough County Aviation Authority, 308 F.2d 724 (5 Cir. 1962); United Publishing and Printing Corp. v. Horan, 268 F.Supp. 948 (D.Conn.1967); Taft Hotel Corporation v. Housing and Home Finance Agency, 162 F.Supp. 538, 539 (D.Conn.1958), aff'd, 262 F.2d 307 (2 Cir. 1958), cert. denied, 359 U.S. 967 (1957); Regina Cargo Airlines, Inc. v. CAB, 10 F.R.D. 628 (E.D.N.Y.1950).

█ Plaintiffs claim that 28 U.S.C. § 1361 is sufficient to sustain service of process and venue. It is clear, however, that this section deals only with subject matter jurisdiction. Plaintiffs also cite 14 C.F.R. § 185.17 which permits service to be made in actions against the Administrator "at the option of the server, on the General Counsel, Deputy General Counsel, or Associate General Counsel, Litigation Division, of the FAA, with the same effect as if served upon the Administrator." But as the last phrase indicates, service of process on the enumerated individuals will not be valid unless service would have been valid if made on the Administrator. Territorial restrictions upon service and venue requirements are not waived.

█ Finally, plaintiffs contend that the Administrator's voluntary intervention as a defendant in similar actions in the past and his participation in prior proceedings in this action justify denial of his motion to dismiss. Assuming that the Administrator has chosen voluntarily to participate in similar past actions, there is no authority that this constitutes a waiver of lack of in personam jurisdiction and venue in actions in which the Administrator does not choose to participate. In fact, it does not appear that the Administrator has voluntarily participated in such actions. Compare Alphonso v. Hillsborough County Aviation Authority, 308 F.2d 724 (5 Cir. 1962), with American Airlines, Inc. v. Town of Hempstead, 272 F.Supp. 226 (E.D.N.Y. 1966); Allegheny Airlines v. Village of Cedarhurst, 132 F.Supp. 871 (E.D.N.Y. 1955), aff'd, 238 F.2d 812 (2 Cir. 1956); City of Newark v. Eastern Airlines, Inc., 159 F.Supp. 750 (D.N.J.1958).

█ The Administrator's participation in this action to date does not constitute a waiver. Under Rule 12(b) and (h), Fed.R.Civ.P., special appearances are unnecessary and it is sufficient if objection is raised by answer or, as here, by motion prior to answer. See, e. g., Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871 (3 Cir. 1944).

Nevertheless, if it were not for other, more basic, deficiencies in plaintiffs' complaint against the Administrator, the Court would not dismiss the complaint as it pertains to that defendant, but would simply order a severance. By doing so, 28 U.S.C. § 1391(e) would apply and the Court would then have

valid in personam jurisdiction over the Administrator and venue would also be proper.

The more basic deficiencies referred to above pertain to the Court's ability to grant the relief which the plaintiffs seek from the Administrator. The relief sought appears to be a mandamus compelling the Administrator to order the other defendants to desist from the activities of which plaintiffs complain. Plaintiffs do not desire a modification of established federal regulations but merely seek enforcement of the existing regulations by the Administrator.

 The Court's power in this area, however, is narrowly circumscribed by the legislative scheme established by Congress in the Federal Aviation Act of 1958, 49 U.S.C. § 1301 et seq. (1964). That scheme, as set forth in 49 U.S.C. § 1482(a), requires a party desiring action by the Administrator in connection with an alleged violation of federal law, regulations, or requirements to file a complaint in writing with the Administrator. Much has been said by the opposing parties as to whether such a complaint was filed here and what action, if any, the Administrator took. Assuming first, however, that such a complaint was filed and rejected without a hearing, as the Administrator may do if he "is of the opinion that [a] complaint does not state facts which warrant an investigation or action", then relief from this action can be obtained, if at all, only from a court of appeals. 49 U.S.C. § 1486(a) provides that "[a]ny order, affirmative or negative, issued by the * * * Administrator * * * shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia * * *", and this jurisdiction is exclusive. See Holman v. Southern Airways, Inc., 210 F.Supp. 407, 410 (N.D.Ga.1962); Regina Cargo Airlines, Inc. v. CAB, 10 F.R.D. 628 (E.D.N.Y.1950). Cf. Black River Valley Broadcasts v. McNinch, 101 F.2d 235 (D.C.Cir.1938). Assuming, on the other hand, that no complaint has

been filed, then it is clear that the legislative scheme prevents any action at plaintiffs' request against the Administrator by any court. A final possibility is that a complaint has been filed and the Administrator has simply ignored it, neither dismissing it nor investigating it. In this instance the Court, pursuant to 28 U.S.C. § 1361, could order the Administrator either to grant an investigation or to dismiss the complaint; i. e. to perform his duty by exercising his discretion one way or the other. The complaint, however, does not allege such facts; nor does it seek this relief. The plaintiffs demand rather that the Court order the Administrator to take positive action to end the alleged violations. This the Court cannot do, for 28 U.S.C. § 1361 does not authorize the Court to direct the Administrator to exercise his discretion in a particular way. Smith v. United States, 333 F.2d 70 (10 Cir. 1964).

Plaintiffs point out, and the Court agrees, that it is perfectly obvious from proceedings in this action to date that the Administrator does not look favorably upon plaintiffs' claims. Plaintiffs contend, therefore, that it would be futile to undertake future proceedings before the Administrator. Nevertheless, the legislative scheme must be adhered to and relief, if it is justified, sought from the proper court.

The Administrator's motion to dismiss the complaint as against him is granted.

Although the Court's hands are tied as far as providing the relief here demanded against the Administrator, the Court would be derelict if it failed to comment on the conduct of the Administrator during the pendency of this action. If plaintiffs' claims were not known to the Administrator prior to the institution of this suit, they surely have been made known to him by now, at least in a general way. Yet the Administrator has refused to extend an invitation to these people to sit down with him so that he may hear them out. The Administrator is charged with serving the "public interest". The people who live near expanding airports in this

jet age are no less a part of the public than those who fly in the planes. The Court expresses no opinion as to the merits of plaintiffs' claims; but it does believe it is within the Court's competence to comment on the Administrator's apparent desire to avoid the issue rather than to take the initiative and meet it head on.

### AIRLINES' MOTION TO DISMISS

Plaintiffs, alleging diversity of citizenship and the requisite jurisdictional amount, aver that jurisdiction over defendants Eastern and Allegheny is conferred upon this Court by 28 U.S.C. § 1332 (1964). Jurisdiction is also claimed pursuant to 28 U.S.C. § 1331 (1964) and 28 U.S.C. § 1343 (1964).

Defendants Eastern and Allegheny in their motion to dismiss argue on the one hand that there is no private right under the present circumstances to maintain an action for violations of the Federal Aviation Act of 1958, 49 U.S.C. § 1301 et seq. (1964), and the regulations promulgated thereunder. On the other hand, defendants claim that they are not subject to an action for a taking, trespass or nuisance. Eastern and Allegheny also challenge jurisdiction pursuant to 28 U.S.C. § 1343.

Since the Court finds that there are facts which, if proved, would entitle plaintiffs to relief, the motion to dismiss by Eastern and Allegheny is denied.

■ First, under the law of this Circuit it is clear that a violation of the provisions of the Federal Aviation Act or the regulations or rules issued pursuant thereto may give rise to a private federal right of action maintainable by those injured by the violation. Fitzgerald v. Pan American World Airways, 229 F.2d 499 (2 Cir. 1956). Judge Frank, speaking for the court in *Fitzgerald*, specifically rejected the argument raised by Eastern and Allegheny that "the sole non-criminal federal remedy for a violation of any provisions of the Act is to be found in [Section 1482(a)], i. e., a complaint to the Civil Aeronautics Board which must investigate the complaint

and, if the facts warrant, must issue an order compelling compliance with the violated provisions of the Act". Judge Frank stated:

> "We cannot agree. As such an order must look to the future, obviously it cannot afford redress to one harmed by a violation [of a section of the Act]. For, whatever may be true of the flight of a plane, undeniably (outside of fiction or 'pure' physics) the flight of time—despite the poet Hood's earnest prayer—is always, alas for us mortals, irreversible. Indeed, Aristotle remarked that 'Agathon is right in saying, "For this alone is lacking even to God, To make undone things that have once been done." ' " Id. at 502.

Plaintiffs cannot be relegated to administrative remedies when these remedies do not exist. See also Wills v. Trans World Airlines, Inc., 200 F.Supp. 360, 364 (S.D.Cal.1961). And the Court cannot avoid granting the relief which may be due plaintiffs merely because the regulations involved may be complex. See World Airways, Inc. v. Northeast Airlines, Inc., 349 F.2d 1007, 1010–11 (1 Cir. 1965), cert. denied, 382 U.S. 984 (1966); CAB v. Modern Air Transport, Inc., 179 F.2d 622, 624–25 (2 Cir. 1950).

■ Thus, jurisdiction exists pursuant to 28 U.S.C. § 1331 or 28 U.S.C. § 1337, and plaintiffs state a sufficient claim for relief.

In addition, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and plaintiffs are entitled to prove negligence by defendants in the operation of their airplanes. In this respect, proof of violation of safety regulations may not only be relevant but may amount to negligence per se. See Wildwood Mink Ranch v. United States, 218 F.Supp. 67 (D.Minn.1963); Leisy v. United States, 102 F.Supp. 789 (D.Minn.1952).

■ Furthermore, with respect to defendants' challenge of plaintiffs' theories of recovery based on a taking or trespass or nuisance, it seemed clear

after the Supreme Court's decision in Causby v. United States, 328 U.S. 256, 266 (1946), that operators of aircraft could be held liable by property owners for flights "so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the property." Although the flights in *Causby* were not within the "navigable air space" through which Congress has granted "a public right of freedom of transit", as navigable airspace was then defined, Griggs v. Allegheny County, 369 U.S. 84, 88–89 (1962), makes it clear that the same standard applies even if flights are within the navigable airspace. Furthermore, even though *Causby* and most of the cases which followed *Causby* prior to *Griggs* involved suits against the government over the operation of military aircraft, these cases do not appear to pivot recovery on the fact that the defendant was the government. For example, Justice Reed, sitting by designation on the United States Court of Claims in Matson v. United States, 171 F.Supp. 283, 285 (Ct.Cl.1959), referred to the liability of the United States "or other aeroplane operators."

Nevertheless, defendants claim that, if there has been any invasion of property rights, it is the City of New Haven as operator of the airport which is alone responsible. Defendants cite Griggs v. Allegheny County, supra, in support of their position. In *Griggs* the Supreme Court held that a county airport operator had "taken" the plaintiff's property where the airplane approach glide paths to the airport were exceedingly close to that property. The glide paths were analogized to approaches to a bridge:

"A county that designed and constructed a bridge would not have a usable facility unless it had at least an easement over the land necessary for the approaches to the bridge. Why should one who designs, constructs, and uses an airport be in a more favorable position so far as the Fourteenth Amendment is concerned?" 369 U.S. at 89.

The Supreme Court's opinion did not specifically consider whether the commercial airlines flying into and out of the airport could be held liable in addition to the airport operator, although the Court did find that the Civil Aeronautics Administrator could not be held responsible despite his regulatory control. Id. at 89–90. But the Supreme Court did note that the airline flights were not in violation of the regulations; nor were the flights lower than necessary for safe landings or take-offs. Id. at 86–87. Thus, even if the *Griggs* decision is viewed in the light most favorable to defendants, it cannot stand for the proposition that an airline is not liable when its planes deviate from approved flight paths. Since plaintiffs' complaint charges Eastern and Allegheny with violations of regulations, it must be assumed that plaintiffs will offer proof of flight path deviation. The Court, therefore, finds it unnecessary at this time to reach the question whether *Griggs* limits plaintiffs' right of action to the City of New Haven if Eastern and Allegheny have strictly followed the specified glide paths for the airport.

Although Causby v. United States, supra, in refusing to recognize the doctrine of ownership of land to "the periphery of the universe", makes proof of trespass by airplane over-flights more difficult, *Causby* does not completely preclude recovery for trespass. If government aircraft or a public airport cause "a direct and immediate interference with the enjoyment and use" of private property, then there has been a "taking". If private aircraft cause this same injury, it is a trespass or nuisance. The correct principle and standard was recognized by the court in City of Newark v. Eastern Airlines, 159 F.Supp. 750, 760 (D.N.J.1958):

"The principles do not foreclose the right of the landowner to maintain an action for trespass to realty in a proper case but the action may not rest on evidence that the aircraft in flight passed across his land in the

navigable airspace above the immediate reaches thereof. There must be evidence not only that the aircraft passed over his lands from time to time but also that there was an unlawful invasion of the immediate reaches of his land; in other words, there must be evidence that the aircraft flights were at such altitudes as to interfere substantially with the landowner's possession and use of the airspace above the surface."

Cf. Allegheny Airlines v. Village of Cedarhurst, 238 F.2d 812, 816 (2 Cir. 1956).

 Finally, plaintiffs allege that defendants have acted alone and with others under color of state law to deprive plaintiffs of personal and property rights guaranteed by the United States Constitution. Under these circumstances the Court is unable to say at this time that plaintiffs cannot prove facts which will entitle them to relief pursuant to 42 U.S.C. §§ 1983 or 1985 (1964), with respect to which this Court has jurisdiction by virtue of 28 U.S.C. § 1343 (1964). See Birnbaum v. Trussell, 371 F.2d 672 (2 Cir. 1966). Vagueness or lack of detail is not sufficient ground for a motion to dismiss. Minkoff v. Stevens Jrs., Inc., 260 F.2d 588 (2 Cir. 1958); Dioguardi v. Durning, 139 F.2d 774 (2 Cir. 1944); 2 Moore's Federal Practice ¶ 12.08, at 2245–6 (2d ed. 1962).

For all these reasons, the motion to dismiss by defendants Eastern and Allegheny is denied.

## CITY OF NEW HAVEN'S MOTION TO DISMISS

 Plaintiffs' complaint alleges a taking of their property without compensation by the City of New Haven under color of state law. Such an allegation is sufficient to raise a substantial federal question under the due process clause of the Fourteenth Amendment. Griggs v. Allegheny County, 369 U.S. 84 (1962); Mosher v. City of Phoenix, 287 U.S. 29 (1932); South Covington & C. St. Ry. v. City of Newport, 259 U.S. 97 (1922); Lowe v. Manhattan Beach City School District, 222 F.2d 258 (9 Cir. 1955). Cf. Mosher v. City of Boulder, 225 F.Supp. 32 (D.Colo.1964). Since plaintiffs also allege the requisite jurisdictional amount, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 (1964).

 The City of New Haven, however, claims that this Court lacks jurisdiction because, if the plaintiffs' property has been taken, such a taking is also a violation of Connecticut's constitution and laws, and plaintiffs must, therefore, first seek redress in a state court. This very contention was rejected by the Supreme Court in Mosher v. City of Phoenix, supra. The plaintiff in that case sought to restrain the City of Phoenix, Arizona, from appropriating her land for purposes of a street improvement project. She alleged in her complaint filed in the District Court for the District of Arizona that the city was "attempting to take and appropriate the property of plaintiff without compensation, and to take and appropriate and use same and deprive the said plaintiff of the permanent use thereof without due process of law, or any process of law, * * * and in violation of the rights of plaintiff as guaranteed her under the Constitution of the United States, and particularly under amendments five and fourteen thereof, which plaintiff here and now pleads and relies on for her protection against the wrongs and threatened wrongs of the defendant city in the proposed taking of her property as hereinbefore described." Id. at 31. But because plaintiff also alleged that the city's action violated state law, the Court of Appeals for the Ninth Circuit affirmed dismissal of the complaint by the District Court for lack of a substantial federal question, noting that the city's action did in fact appear to violate state law. Mosher v. City of Phoenix, 54 F.2d 777 (9 Cir. 1931). The Supreme Court, however, held that the dismissal was improper:

"We are of the opinion that the allegations of the bills of complaint that the City acting under color of state

authority was violating the asserted private right secured by the Federal Constitution, presented a substantial federal question and that it was error for the District Court to refuse jurisdiction." 287 U.S. at 32.

This case is controlling here. Barney v. New York, 193 U.S. 430 (1904), cited by the City of New Haven for the contrary position, was decided by the Supreme Court prior to the *Mosher* case. As Mr. Justice Brennan, writing for the Court in United States v. Raines, 362 U.S. 17, 25–26 (1960), stated:

"The appellees can draw no support from the expressions in Barney v. City of New York * * * The authority of those expressions has been 'so restricted by our later decisions,' see Snowden v. Hughes, [321 U.S. 1, 13 (1943)], that Barney must be regarded as having 'been worn away by the erosion of time,' Tigner v. Texas, 310 U.S. 141, 147, and of contrary authority. See Raymond v. Chicago Union Traction Co., 207 U.S. 20, 37; Home Tel. & Tel. Co. v. Los Angeles, 227 U.S. 278, 283–28⁹; Iowa-Des Moines Nat. Bank v. Bennett, 284 U.S. 239, 247; Snowden v. Hughes, supra; Screws v. United States, 325 U.S. 91, 107–113, 116. Cf. United States v. Classic, 313 U.S. 299, 326. It was said of Barney's doctrine in Home Tel. & Tel. Co. v. Los Angeles, supra, at 284, by Mr. Chief Justice White: '[its] enforcement * * * would * * * render impossible the performance of the duty with which the Federal courts are charged under the Constitution.'"

The Court adheres to the Supreme Court's admonition in Martin v. Creasy, 360 U.S. 219, 224 (1959), that a federal court should "stay its hand" in order to avoid "unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions." But unlike *Martin*, the circumstances which would merit abstention are not present in the instant action. The constitutional question is not a novel one, having been decided in

Griggs v. Allegheny County, supra, and the activities from which the plaintiffs seek relief have already occurred. Furthermore, a state statute is not under attack and the state courts have not, as they had in *Martin*, signified in a related action that relief will be granted.

The Court, therefore, finds that plaintiffs state a good cause of action against the City of New Haven over which this Court has, and should exercise, jurisdiction.

The City of New Haven also claims that the plaintiffs' complaint must fail because the United States, the C.A.B., and all users and operators of aircraft at the airport are indispensable parties and have not been joined as defendants. Griggs v. Allegheny County, supra, squarely rejects this claim.

A further challenge is made to the maintenance of this suit as a class action and to the standing of certain of the plaintiffs. In view of the fact that the Court has subject matter jurisdiction and the standing of the majority of the plaintiffs is unchallenged, the Court will defer a determination of these issues until a more appropriate point in the proceedings. Similarly, the Court will defer ruling on the issue of whether the City of New Haven is entitled to a further specification of damages, although the Court does find at this time that, under the present posture of the action, the complaint alleges damages with sufficient specificity to sustain a cause of action.

The motion to dismiss by the City of New Haven is denied.

### ORDER

ORDERED, as follows:

(1) That the motion to dismiss as against the defendant Administrator of the Federal Aviation Agency is granted, but without costs; and the Clerk is directed to enter judgment accordingly.

(2) That the motion to dismiss as against the defendants Eastern and Allegheny is denied.

(3) That the motion to dismiss as against the defendant City of New Haven is denied.