The **TOWN OF EAST HAVEN et al.,**
Plaintiffs,

v.

**EASTERN AIRLINES, INC.,** Allegheny Airlines, Inc., the Administrator of the Federal Aviation Agency and the City of New Haven, Defendants.

Civ. No. 12175.

United States District Court
D. Connecticut.
Nov. 4, 1968.

See also D.C., 281 F.Supp. 507.

William A. Blank, Brooklyn, N.Y., and Anthony V. DeMayo, of Cohen & DeMayo, New Haven, Conn., for plaintiffs.

Robert Matthew Beckman, Washington, D.C., Special Counsel, and Roger J. Frechette, Asst. Corp. Counsel, New Haven, Conn., for defendant City of New Haven.

William R. Murphy and Louis M. Winer, of Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for defendants Eastern Airlines, Inc. and Allegheny Airlines, Inc.

## MEMORANDUM OF DECISION ON APPLICATION TO DISQUALIFY ALL CONNECTICUT FEDERAL JUDGES

TIMBERS, Chief Judge.

### RELIEF SOUGHT AND COURT'S RULING THEREON

At the request of counsel for defendant City of New Haven, an informal conference between all counsel and the undersigned was held in the undersigned's chambers at New Haven on October 25, 1968. The purpose of the conference was not disclosed to the undersigned beforehand. At the conference special counsel for the City of New Haven, of Washington, D. C., stated that his purpose in requesting the conference was informally to suggest that all of the Connecticut federal judges should be disqualified from any further proceedings in this case and that the undersigned *sua sponte* should request the Chief Judge of the Court of Appeals for the Second Circuit to assign a judge from outside Connecticut to try the case. For the reasons stated below, the application in all respects is denied.

Moreover, although the application was made informally, in chambers, and off the record, the undersigned believes that, in view of the extraordinary relief requested and the obvious public interest involved in any application that all the Connecticut federal judges be disqualified in this or any case, a formal order should be entered *on the record* briefly stating the undersigned's reasons for denying the application. Hence this memorandum of decision.

While the application to disqualify purports to be an informal one, a written memorandum submitted by special

counsel for the City of New Haven [1] makes it clear that, at least by analogy, the application invokes the principles of 28 U.S.C. § 144, which is quoted in full, and seeks to disqualify the Connecticut federal judges on grounds of personal bias or prejudice. Accordingly, the decision of the undersigned denying the application applies the standards of 28 U.S.C. § 144.[2]

## NATURE OF ACTION AND PRIOR PROCEEDINGS

The instant action was brought by the Town of East Haven and owners of property in the vicinity of New Haven's municipal airport against two airlines, the Administrator of the Federal Aviation Agency and the City of New Haven (the latter added as a defendant by motion) to obtain injunctive relief, mandamus and damages resulting from injuries claimed to have been sustained by introduction of prop-jet and pure jet commercial flights into and out of the airport. After two days of hearings on plaintiffs' motion for a preliminary injunction, the Court recessed the hearings to permit defendants to file motions to dismiss. Following argument and briefing of these motions, the Court granted the motion to dismiss of the Administrator of the FAA but denied the motions to dismiss of the two airlines and the City of New Haven. Town of East Haven v. Eastern Airlines, Inc., supra note 2. On January 29, 1968, at the time of the hearing on the City of New Haven's motion to dismiss, the Court recessed *sine die* the preliminary injunction hearing upon the parties' representations to the Court that jet operations at the New Haven airport had been voluntarily discontinued at least temporarily, and it being the Court's understanding, as stated on the record, that jet operations at the airport would not be resumed unless the Court were promptly informed of any intended resumption of jet operations there. The case has now been assigned for trial before the undersigned at New Haven on December 9, 1968, at which time the preliminary injunction hearing will be either completed separately or consolidated with the trial on the merits pursuant to Rule 65(a) (2), Fed.R.Civ.P.

## DEFENDANTS' CLAIMS OF DISQUALIFICATION

The essential claims upon which defendants [3] seek to disqualify all of the

1. This memorandum, dated October 24, 1968, is entitled "Effect of Judge Zampano's interest and participation in The Town of East Haven, et al. v. Eastern Airlines, Inc., et al. on the qualification of the District Court of Connecticut to proceed with the case." It is unsigned. It was handed to the undersigned by special counsel for the City of New Haven after the chambers conference on October 25 had been concluded. The undersigned directed that copies of this memorandum be furnished to all counsel, some of whom already had left chambers.

2. Of course, certain indispensable prerequisites to a motion to disqualify pursuant to 28 U.S.C. § 144 have not been complied with here. No affidavit by a party to the proceeding has been filed alleging personal bias or prejudice on the part of the judges against whom this application is directed. No certificate by counsel of record stating that the motion is made in good faith has been filed. And the motion is not timely; rather than being filed "not less than ten days before the beginning of the term at which the proceeding is to be heard", the instant application has been made some nine months after the still uncompleted preliminary injunction hearing began and approximately nine months after denial of the City of New Haven's motion to dismiss the action. Town of East Haven v. Eastern Airlines, Inc., 282 F.Supp. 507, 515–16 (D.Conn.1968).

Defendants' reliance on 28 U.S.C. § 455 appears to the undersigned to be so inapposite as not to merit discussion. The same applies to two wholly unidentified bar association committee opinions, submitted by the City of New Haven's special counsel, construing miscellaneous canons of professional and judicial ethics, none of which has the slightest relevance here.

3. While the oral and written request for disqualification was made by special counsel for the City of New Haven, counsel for all defendants present at the chambers conference joined in the request.

Connecticut federal judges from further proceedings in this case, as stated orally at the chambers conference on October 25 and confirmed by defendants' written memorandum dated October 24, may be briefly summarized as follows: Honorable Robert C. Zampano is one of the four judges of the United States District Court for the District of Connecticut; his official station is New Haven; he lives in the Town of East Haven, in the vicinity of the New Haven airport (a substantial portion of the land upon which the airport is located being outside the city limits of New Haven and within the Town of East Haven); being an owner of property and a resident in the vicinity of the airport, "[i]t appears that he would benefit by an injunction and award of damages for alleged invasion of personal and property rights as claimed in the complaint";[4] on September 16, 1968, Judge Zampano, in the company of one of the named plaintiffs herein, was at the airport, observed the operation of a jet aircraft which landed and took off at the airport that night, and spoke to airline personnel at the airport regarding that jet flight; and "Judge Zampano has a close, personal relationship with Chief Judge Timbers" in that they "eat lunch regularly together."[5]

While defendants' immediate objective is to disqualify the undersigned, they have made it clear that they seek to disqualify *all* of the Connecticut federal judges. Their oral and written requests expressly refer to Judge Blumenfeld and Judge Clarie. At the chambers conference on October 25, the undersigned, in an effort to ascertain the full scope of defendants' disqualification request, asked specifically whether it extended to United States Circuit Judges J. Joseph Smith and Robert P. Anderson, each of whom resides in Connecticut; defendants' counsel, after conferring together, responded in the affirmative.[6] And defendants suggest that the undersigned "request the Chief Judge of the Court of Appeals for the Second Circuit to appoint a judge from outside Connecticut to try this case."[7]

### APPLICABLE LEGAL PRINCIPLES

Solely for the purpose of the instant application and applying the standards of 28 U.S.C. § 144 in ruling upon the application, the facts asserted by defendants in support of their essential claims, set forth above, to disqualify all of the Connecticut federal judges from further proceedings in this case, have been taken as true; the inquiry is confined to their legal sufficiency. Berger v. United States, 255 U.S. 22 (1921); Rosen v. Sugarman, 357 F.2d 794, 797 (2 Cir. 1966).

■■■ To be sufficient, a claim of prejudice must show personal bias or prejudice on the part of the judge in the sense of giving "fair support to the charge of a bent of mind that may prevent or impede impartiality". Berger v. United States, supra, at 33–34; Rosen v. Sugarman, supra, at 798. Put another way, a claim of prejudice to be sufficient must state with particularity facts which "would fairly convince a sane and reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute." United States v. Hanrahan, 248 F.Supp. 471, 475 (D.D.C.1965).

■■■ Moreover, disqualification is warranted and appropriate only if the

4. Defendants' Memorandum, supra note 1, at 2.

5. Id. at 2.

6. Since the thrust of defendants' disqualification request is to disqualify any and all federal judges who reside in Connecticut, logically their disqualification request extends likewise to Chief Judge J. Edward Lumbard and United States Circuit Judge Leonard P. Moore, both of the Court of Appeals for the Second Circuit, and to Associate Justices John M. Harlan and Abe Fortas, of the United States Supreme Court. All have homes in Connecticut.

7. Defendants' Memorandum, supra note 1, at 8.

alleged bias and prejudice stems from an extrajudicial source and has resulted in the formulation of an opinion on the merits not based upon what the judge has learned by his participation in the proceedings before him. United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).

■ Aside from the lack of timeliness of the instant application to disqualify, the absence of any affidavit by a party alleging personal bias or prejudice on the part of any judge, and the absence of any certificate of good faith by counsel of record, the essential claims upon which defendants rely to disqualify all of the Connecticut federal judges from further proceedings in this case, viewing such claims in the light most favorable to defendants, are patently insufficient as a matter of law to show the requisite personal bias or prejudice to disqualify a judge.

The essence of defendants' claims is that Judge Zampano has a personal and property interest in the instant litigation by reason of his owning a home and residing in close proximity to the New Haven airport; that the undersigned, whose chambers are in the same courthouse as Judge Zampano's, has a close, personal relationship with Judge Zampano since the two eat lunch regularly together; and that somehow all of this "has created a situation which, at the least 'may not unfairly lead others to believe' that unconscious feelings by Judge Zampano's brother judges . . . may operate in the ultimate judgment".[8] In short, the claim is that none of the Connecticut federal judges, including the undersigned, is legally qualified to hear and determine a case in which another Connecticut federal judge has a personal and property interest.

It would be one thing if the application were one to disqualify Judge Zampano; but he has had absolutely nothing to do with the adjudication of this case and he scrupulously has refrained from even a semblance of seeking to influence the proceedings which have been handled entirely by the undersigned. Moreover, any innuendo that Judge Zampano would seek to influence the adjudication of such proceedings (even if there were a judge susceptible of being influenced) is utterly unthinkable. Judge Zampano simply is not that kind of judge. Although at the time of his appointment to the federal bench four years ago he was the youngest federal judge in the Country, he had had an outstanding career in private practice as a member of the Connecticut bar; and as United States Attorney for this District he had earned a well deserved reputation as the most vigorous, successful and scrupulously fair prosecutor ever to have served as United States Attorney for this District. Now after four years as United States District Judge, he is recognized as one of the ablest federal judges in the United States, bar none. And there are few if any federal judges in the Second Circuit who have not had lunch with Judge Zampano and enjoyed it.

Aside from what federal judges generally like to regard as their rugged independence even among themselves, the Connecticut federal judges, at this the oldest seat of any federal court in the Nation, cherish particularly the tradition in this District of "incorruptible impartiality"[9] which for them is more pervasive, more potent and more precious than any standard of judicial conduct capable of being formulated by statute, rule or decision. And when we district judges commit error, as we surely do from time to time, federal appellate judges have never been notably reticent about reversing, as they surely do from time to time. All in all, the Connecticut federal judges—trial and appellate—are a tough lot. They are not prone to influence, nor are they

8. Id. at 7.

9. Judge Learned Hand's characterization of Judge Carroll C. Hincks, referred to during Memorial Proceedings for Judge Hincks on December 21, 1964, 342 F.2d, prefatory pages, at 13.

susceptible of being influenced. What is more, the bar and the public generally know this and respect it.

 Clearly, a judge has no interest in trying a particular case. Nor does a party have any right or interest in having a particular judge try a particular case. Upon a proper showing of personal bias or prejudice, a judge should promptly decline to proceed further with the case; and the undersigned judge against whom, among others, the instant application is directed yields to no one in his sensitivity to the duty imposed upon a judge by the statute if properly invoked. By the same token, however, a judge who disqualifies himself upon a legally insufficient showing, not only imposes an undue burden upon his fellow judges, but, in view of the request here for assignment of a judge from outside Connecticut to try this case, he imposes an extraordinary burden upon a busy out of state judge to come here to try a case which it is the plain duty of a judge of this Court to try himself.

■ The basis of defendants' application to disqualify all of the Connecticut federal judges being legally insufficient, disqualification would be improper. A judge is duty-bound not to disqualify himself upon insufficient grounds. Only in this way can the Court safeguard itself from frivolous attacks. Rosen v. Sugarman, supra; In re Union Leader Corp., 292 F.2d 381, 391 (1 Cir.), cert. denied, 368 U.S. 927 (1961); United States v. Richmond, 178 F.Supp. 44, 48 (D.Conn.1958) (Smith, D.J.); Mirra v. United States, 255 F.Supp. 570, 583 (S.D.N.Y.1966), aff'd, 379 F.2d 782 (2 Cir.), cert. denied, 389 U.S. 1022 (1967); United States v. Hanrahan, supra, at 475; United States v. Valenti, 120 F.Supp. 80, 83 & n.2 (D.N.J.1954).

## ORDER

Applying the standards of 28 U.S.C. § 144 to defendants' application to disqualify all of the Connecticut federal judges from further proceedings in this case and to have the undersigned request the Chief Judge of the Court of Appeals for the Second Circuit assign a judge from outside Connecticut to try this case, it is

Ordered that defendants' application be, and the same hereby is, denied in all respects; and it is further

Ordered that this case be, and the same hereby is, assigned for a pre-trial conference before the undersigned at New Haven on Monday, November 18, 1968, at 2 P.M.