ARCHER GARDENS, LTD. and Podgel Associates, Ltd., Plaintiffs,

v.

BROOKLYN CENTER DEVELOPMENT CORPORATION, George Klein, City of New York and Richard Rosan, Defendants.

No. 78 Civ. 1230 (CHT).

United States District Court, S. D. New York.

March 22, 1979.

David Jaroslawicz, New York City, for plaintiffs.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants Brooklyn Center Development Corp. and George Klein.

Sidney Kwestel, Geri S. Krauss, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Archer Gardens, Ltd. and Podgel Associates, Ltd. ("plaintiffs") own properties in an area in Brooklyn, New York, which has been designated for urban renewal. Their amended complaint in this action alleges a de facto appropriation of their properties and seeks compensation therefor. Defendants are the City of New York ("the City") and Brooklyn Center Development Corporation ("Development"), a private corporation.[1] Jurisdiction is invoked under 28 U.S.C. §§ 1331(a) and 1983, and the latter's jurisdictional counterpart, section 1343, and under the doctrine of pendent jurisdiction.[2] Defendant Development now moves this Court to dismiss the amended complaint pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.[3] Development contends that plaintiffs fail to state a claim for relief under either the fourteenth amendment or section 1983 as against itself as a private party. For the reasons discussed below, the motion is denied.

On a motion to dismiss for failure to state a claim for which relief can be granted, the factual allegations of the complaint are accepted as admitted,[4] and the motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). In the matter at bar it appears that in 1970 the City designated a section in Brooklyn as the Brooklyn Center Urban Renewal Area. The City then chose Development to be the developer and sponsor of the urban renewal plan. Plaintiffs' properties, located within the urban renewal area, were to be acquired by the City and Development for $775,000.00 no later than approximately 1973.[5] How-

---

1. Also joined as defendants are Richard Rosan, as Director of the City of New York Office of Development, and George Klein, as President of Brooklyn Center Development. The latter joins Brooklyn Center Development Corporation in the instant motion.

2. The amended complaint contains four claims for relief. The first claim, alleging an unconstitutional taking and seeking $775,000.00 as just compensation, constitutes the only federal claim. The remaining claims, which allege breach of contract and fraud, are predicated on state law.

3. The City of New York and Richard Rosan filed a Rule 12(b) motion to dismiss the original complaint, but did not renew the motion against the amended complaint.

4. See 2A Moore's Federal Practice ¶ 12.08, at 2266–67.

5. Real estate in designated urban renewal areas is usually acquired through negotiation with

ever, the date of acquisition was postponed. Finally, in July 1977, plaintiffs were informed that their properties would not be acquired—and thus that they would not receive the agreed-upon compensation—until approximately December 31, 1983. Plaintiffs assert that because of the past and continuing threat of condemnation they have been unable to generate income from their properties by sale, lease or encumbrance and that, as a consequence, they have been unable to meet their tax obligations. Indeed, in January 1978, the City commenced tax foreclosure proceedings against plaintiffs' properties, an act which plaintiffs see as a continuation of the defendants' breach. They charge that the defendants conspired to delay the acquisition date in order to acquire the urban renewal property at tax foreclosure sales at prices far below those which the defendants would otherwise be obligated to pay as condemnation awards. In sum, plaintiffs' claim is that the City and Development, acting in concert and "under color" of state law, have de facto appropriated their properties without just compensation in violation of the fifth and fourteenth amendments of the Constitution of the United States.

Development, in moving to dismiss, contends that plaintiffs fail to allege a "taking" within the meaning of the fifth and fourteenth amendments, or to allege that Development acted "under color" of state law. In the alternative, Development asks this Court to dismiss the action on the ground that plaintiffs have failed to exhaust available state remedies. The questions before this Court are (1) whether plaintiffs do allege an unconstitutional taking; (2) whether Development, as a private party, can act "under color" of state law so as to be liable for such an alleged taking; and (3) whether, assuming that a taking has properly been alleged and that Development is a proper defendant, this Court should refuse to exercise its jurisdiction because plaintiffs have an available remedy in state court.

I

To state a claim for relief under section 1983, a plaintiff must allege, first, that the defendant has deprived him of a right secured by "the Constitution and laws" of the United States; and second, that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom or usage of any State or Territory." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Fine v. City of New York*, 529 F.2d 70, 73 (2d Cir. 1975).[6]

the owners. However, if this fails, the governmental agency may use the power of eminent domain to force a sale. The purchase price is set by independent appraisers. The property is commonly sold to a private developer, or sponsor, who is obligated by the imposition of covenants running with the land to build according to a general area plan. Generally, private developers are not selected until the property has been acquired, families relocated and buildings demolished. *See generally* Anderson, The Federal Bulldozer (1964).

**6.** Jurisdiction is also predicated upon 28 U.S.C. § 1331—the federal question provision—although the moving defendants have not pressed this issue. An alleged taking in violation of the fifth and fourteenth amendments has been recognized to present a "serious constitutional question," *Foster v. Herley*, 330 F.2d 87 (6th Cir. 1964), *on remand Foster v. City of Detroit*, 254 F.Supp. 655 (E.D.Mich.1966), *aff'd*, 405 F.2d 138 (6th Cir. 1968), which is "clearly within the district court's 'federal question jurisdiction.'" *Muskegon Theatres, Inc. v. City of*

*Muskegon*, 507 F.2d 199, 200 (6th Cir. 1974); *accord, O'Grady v. City of Montpelier*, 573 F.2d 747, 750 (2d Cir. 1978) (jurisdiction based on §§ 1331 and 1343); *Lowe v. Manhattan Beach City School District*, 222 F.2d 258, 259 (9th Cir. 1955) (jurisdiction based on § 1331); *Sixth Camden Corp. v. Township of Evesham*, 420 F.Supp. 709, 721 (D.N.J.1976) (jurisdiction based on §§ 1331 and 1343); *Donohoe Construction Co., Inc. v. Maryland-National Capital Park and Planning Comm'n*, 398 F.Supp. 21, 24 (D.Md.1975), *rev'd on other grounds*, 567 F.2d 603 (4th Cir. 1977) (jurisdiction based on §§ 1331 and 1343); *Haczela v. City of Bridgeport*, 299 F.Supp. 709, 712 (D.Conn.1969) (jurisdiction based on § 1331); *Town of East Haven v. Eastern Airlines, Inc.*, 282 F.Supp. 507, 515 (D.Conn.1968) (jurisdiction based on §§ 1331 and 1343).

The "under color" of state law provision in § 1983 is the equivalent of the state action requirement of the fourteenth amendment. *Shirley v. State National Bank of Connecticut*, 493 F.2d 739, 741 (2d Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974).

The fifth amendment of the United States Constitution provides, *inter alia*, "nor shall private property be taken for public use, without just compensation." The provisions of this amendment are made applicable to the states and their subdivisions through the due process clause of the fourteenth amendment. *West v. Chesapeake & Potomac Telephone Co.*, 295 U.S. 662, 671, 55 S.Ct. 894, 79 L.Ed. 1640 (1935); *Chicago, Burlington & Quincy Railroad Co. v. City of Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). As a general rule, "[t]he mere enactment of legislation which authorizes condemnation of property cannot be a taking." *Danforth v. United States*, 308 U.S. 271, 286, 60 S.Ct. 231, 237, 84 L.Ed. 240 (1939). However, governmental action in the form of regulation can amount to a de facto taking which requires compensation, *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1957), although "[t]here is no set formula to determine where regulation ends and taking begins." *Goldblatt v. Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1961).

Lower courts have attempted to define the line between legitimate governmental action and unconstitutional taking on a case by case basis. By the strictest rule, governmental regulation will not amount to an unconstitutional taking absent interference so substantial as to deprive the landowner of all reasonable uses of his land. *Steel Hill Development, Inc. v. Town of Sanbornton*, 469 F.2d 956, 963 (1st Cir. 1972); *Kent Island Joint Venture v. Smith*, 452 F.Supp. 455 (D.Md.1978). In the instant complaint, plaintiffs allege a substantial interference, charging that as a consequence of the defendants' actions, they have been unable "to use, sell, lease or encumber their properties since 1973 . . . ." Amended Complaint ¶ 24.

Less stringent standards have also been articulated. In *Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency*, 561 F.2d 1327, 1330 (9th Cir. 1977), the Ninth Circuit held that "When a public entity acting in furtherance of a public project directly and substantially interferes with property rights and thereby significantly impairs the value of the property, the result is a taking in the constitutional sense . . . ." In the instant complaint, plaintiffs allege that "[n]o persons were willing to use, purchase or lease the properties because the defendants had condemned the properties for all practical purposes and/or actual condemnation was imminent." Amended Complaint ¶ 22.

The Sixth Circuit has come closest to delineating governmental actions which would constitute unconstitutional takings in the context of urban renewal projects: "[W]e think the true rule is that there is no de facto taking of properties which have decreased in value because of an urban renewal project unless there is a physical invasion, damage or injury, or a restraint of some type, or action by the City to appropriate such properties." *Sayre v. City of Cleveland*, 493 F.2d 64, 70 (6th Cir.), *cert. denied*, 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974). In the instant complaint, plaintiffs allege that defendants have in fact taken "action . . . to appropriate such properties," not only by contracting to purchase but also by commencing tax foreclosure proceedings pursuant to a scheme whereby Development will "purchase the plaintiffs' properties . . . at well below the agreed-upon price of $775,000.00." Amended Complaint ¶¶ 25–26.

In *Foster v. Herley*, 330 F.2d 87 (6th Cir. 1964), *on remand Foster v. City of Detroit*, 254 F.Supp. 655 (E.D.Mich.1966), *aff'd*, 405 F.2d 138 (6th Cir. 1968), the actions of the city in instituting condemnation proceedings, refusing to allow improvements, and permitting years of delay were found to amount to a taking of plaintiff's property. There the element which carried the economic loss caused by urban renewal to the level of a taking within the meaning of the fifth and fourteenth amendments was the *abuse* of eminent domain. *Foster v. City of Detroit, supra*, 254 F.Supp. at 665.

Similar abuse of legitimate condemnation powers is alleged by the plaintiffs in the complaint before this Court, and, employing any of the tests articulated, *supra,* the allegations herein must be construed to state a claim of taking without just compensation in violation of the Constitution.

## II

■ Development next contends that, even assuming arguendo that a taking is stated, such a taking by Development—a private party without legislative authorization to condemn—cannot constitute a *constitutional* deprivation. Thus, argues Development, this Court lacks subject matter jurisdiction. In raising this objection and relying on *Yearsley v. W. A. Ross Construction Co.,* 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940), Development ignores the gravamen of plaintiffs' claim. In *Yearsley,* where the Supreme Court held that a private party could not be held liable for a taking pursuant to validly conferred authority, the contractor was not alleged to have any interest other than performing the work assigned to him by the government. In the complaint before this Court, however, plaintiffs allege that Development participated for its own benefit with the City in this scheme, willfully violating for its own gain rights secured by the fifth and fourteenth amendments. These allegations take the complaint out of the *Yearsley* ambit for purposes of this motion to dismiss. It is well established that private persons may act "under color" of state law, and hence be held liable under section 1983 when they act in conspiracy with state officials. *Adickes v. S. H. Kress & Co., supra,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Taylor v. Gibson,* 529 F.2d 709 (5th Cir. 1976); *Birnbaum v. Trussell,* 371 F.2d 672 (2d Cir. 1966). The Supreme Court has stated:

> Private persons jointly engaged with state officials in the prohibited action, are

acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. *It is enough that he is a willful participant in joint activity with the State or its agents.*

*United States v. Price, supra,* 383 U.S. at 794, 86 S.Ct. at 1157 (emphasis added and footnote omitted).[7] Thus, the alleged acts of the private defendant Development may be deemed to have been done "under color" of state law and the resultant taking may be construed as a constitutional violation.

## III

■ Finally, Development asks this Court to dismiss plaintiffs' amended complaint because plaintiffs have not availed themselves of available state procedures to compensate for an alleged taking. There is no requirement under section 1983 that plaintiffs exhaust state remedies. On the contrary, the Supreme Court has stated unequivocally that "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). *See also Meyer v. Frank,* 550 F.2d 726, 729 (2d Cir. 1977); *Carothers v. Follette,* 314 F.Supp. 1014, 1018 (S.D.N.Y.1970). To hold otherwise would be to thwart the remedial purpose underlying section 1983, *i. e.,* "to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies." *Monroe v. Pape, supra,* 365 U.S. at 180, 81 S.Ct. at 480.

In contending that plaintiffs who allege an unconstitutional taking must first exhaust state remedies, Development relies upon *Kohlasch v. New York State Thruway Authority,* 460 F.Supp. 956 (S.D.N.Y.1978).

---

7. While the *Price* Court was discussing 18 U.S.C. § 242, it expressly noted that " '[u]nder color' of law means the same thing in § 242 that it does in the civil counterpart of § 242, 42 U.S.C. § 1983." 383 U.S. at 794 n. 7, 86 S.Ct. at 1157.

The *Kohlasch* plaintiffs claimed that as a result of the discharge of oil, sand, debris and chemicals from a drain constructed by the defendant state entity, property had been taken without just compensation. Judge Weinfeld found that the complaint failed to state a claim for an unconstitutional taking where plaintiffs had made no attempt to avail themselves of adequate state procedures for compensation following a de facto appropriation. *Id.* at 961. The *Kohlasch* rationale rests on a suggestion offered by our Court of Appeals in *O'Grady v. City of Montpelier,* 573 F.2d 747, 751–52 (2d Cir. 1978):

> It has been suggested in a somewhat analogous context by then Circuit Judge Stevens that if such a remedy does exist and has not been resorted to, no constitutional deprivation can be claimed. See *Bonner v. Coughlin,* 517 F.2d 1311, 1319–20 (7th Cir. 1975). Although a subsequently convened en banc court in that case rejected this approach in the context of the prisoner's suit before it, 545 F.2d 565 (7th Cir. 1976) (en banc), this theory would seem to apply with greater force to the more traditional type of "taking" of property by the State that is alleged here.

However, *Kohlasch* does not refer to the large number of eminent domain cases over which federal jurisdiction has been exercised absent prior state court action. *See,* e. g., *Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency, supra,* 561 F.2d 1327 (9th Cir. 1977); *Sayre v. City of Cleveland, supra,* 493 F.2d 64 (6th Cir.), *cert. denied,* 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974); *Ballard Fish & Oyster Co. v. Glaser Construction Co.,* 424 F.2d 473 (4th Cir. 1970); *Donohoe Construction Co., Inc. v. Maryland-National Capital Park and Planning Comm'n,* 398 F.Supp. 21 (D.Md. 1975), *rev'd on other grounds,* 567 F.2d 603 (4th Cir. 1977); *Haczela v. City of Bridgeport,* 299 F.Supp. 704 (D.Conn.1969); *Town of East Haven v. Eastern Airlines, Inc.,* 282 F.Supp. 507 (D.Conn.1968). *But see Simmons v. Wetherell,* 472 F.2d 509 (2d Cir. 1973) (Second Circuit noted federal jurisdiction, but abstained from deciding the issue of taking because the crucial question of title to the land was the subject of a *pending* state proceeding).

Moreover, the precise issue of exhaustion of state remedies in eminent domain cases was rejected by a district court in this circuit in *Town of East Haven, supra,* where property owners claimed, *inter alia,* that a municipally operated airport had "taken" their property without just compensation. In refusing to "stay its hand," the *East Haven* court noted that "the constitutional question is not a novel one . . . [,] a state statute is not under attack and state courts have not . . . signified in a related action that relief will be granted." *Town of East Haven v. Eastern Airlines, Inc., supra,* 282 F.Supp. at 516.

While it is arguable that, in the instant case, the in rem tax foreclosure proceeding provides a state forum for plaintiffs' claims by way of equitable defense, this would be an unusual and extremely circuitous route to reach issues of appropriation and conspiracy. The Court has found no authority— nor have movants provided any—which would compel the conclusion that such a tenuous state remedy can justify a federal court's declining to exercise jurisdiction.

In addition, *Kohlasch* is factually distinguishable from the instant case. In *Kohlasch,* there was no inference or allegation of conspiracy or misuse of condemnation powers by state officials. Indeed, there was not even an indication that the state entity was aware of the activity which the plaintiffs alleged was a taking. Thus there was no reason for the *Kohlasch* court to believe that the relief sought by the plaintiffs would be denied them by a state court. By contrast, the section 1983 complaint before this Court alleges that the defendants have abused the powers of eminent domain in order to deprive the plaintiffs of their properties without just compensation. In view of the purpose underlying section 1983 —to insure fair adjudication of claims against the state and its agents—this Court sees no justification for declining to exercise its original jurisdiction.

For the reasons set forth above, the motion to dismiss is denied.

So ordered.