**Marva GAY, Plaintiff-Appellant,**

v.

**BOARD OF REGISTRATION COMMISSIONERS et al., Defendants-Appellees.**

**No. 72-1157.**

United States Court of Appeals, Sixth Circuit.

Aug. 29, 1972.

---

15. See Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1652, 32 L.Ed.2d 212 (1972).

Robert A. Sedler, Lexington, Ky., for plaintiff-appellant; Donna Morton Maier, Louisville, Ky., on brief.

Frank Logan, Asst. Director of Law, City of Louisville Law Dept., Louisville, Ky., for defendants-appellees.

Before CELEBREZZE and MILLER, Circuit Judges, and THOMAS, District Judge.*

WILLIAM E. MILLER, Circuit Judge.

The appellant Marva Gay, a permanent resident of Louisville, Kentucky, instituted the present class action on October 19, 1971 against the Board of Registration Commissioners in the District Court for the Western District of Kentucky challenging the constitutionality of Kentucky Revised Statutes § 117.-735(1).[1] This statute requires any voter in a first class city[2] who changes his name by marriage or otherwise to re-register in order to vote in future elections. The appellant after her marriage was purged from the voting rolls and failed to re-register before the registration deadline for the November, 1971 election had expired. Appellant's theory is that the statute discriminates against women because of their sex in violation of the Fourteenth and Nineteenth Amendments. After a preliminary hearing the court allowed the appellant to amend her complaint to request that a three-judge panel be convened under 28 U.S.C. § 2281[3] but denied the preliminary injunction to permit her to vote in the November, 1971 election. On December 29, 1971 the lower court found that the action was not a proper one for a three-judge panel. He then dismissed the complaint for failure of appellant to exhaust state remedies.

The appellant married in June, 1971 but did not re-register to vote in the surname of her husband, although taking his name for other purposes. On October 1, 1971 she received notice that she was required to re-register to vote for future elections, and that since she had failed to do so, her name had been automatically removed from the voting

---

* The Honorable William K. Thomas, United States District Judge for the Northern District of Ohio, sitting by designation.

1. *111.735 New registration required when name changed; transfer of registration on change of residence; utility companies to report change of address of customers.*
    (1) Any voter of a city of the first class who changes his name, by marriage or otherwise, shall be required to register anew, and the old registration and record of such voter shall be marked "Cancelled. Name changed to . . . ." The old record shall then be placed in the cancelled registrations file and the copies thereof disposed of as provided in KRS 117.875. The change may be made by the voter either in person or by mailing the proper form, completed and notarized, to the registration authorities.

2. Under Kentucky statutes cities are classified on a population basis. The only city in Kentucky included within the first class is the city of Louisville.

3. 28 U.S.C. § 2281 provides:
    An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

rolls. Appellant informed the Board that she intended to continue to vote in her former name. When the appellant received notice of her removal from the voting rolls it was already too late to register to vote in the November, 1971 election, the registration books having closed on September 7, 1971. This was 59 days before the election as required by Kentucky Revised Statute, § 117.620.

In the order dismissing the appellant's action the district court relied on two grounds. First, the court held that the convening of a three-judge panel was not proper because the statute in question was of only local application. Second, the court invoked the abstention doctrine, holding that a federal court should abstain from passing on the constitutionality of the statute until a state court had had an opportunity to do so.

■■ The lower court, in our view, was correct in holding that a three-judge panel was not required. Under 28 U.S.C. § 2281 a three-judge panel is required to be convened in any case seeking to enjoin the "enforcement, operation, or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute . . . ." The purpose of this provision was to prevent a single federal judge from paralyzing a state regulatory scheme and to provide procedural protection against the infliction of "improvident statewide doom" by a federal court on a state legislative policy. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1940). The statute is not applicable to local ordinances or regulations, Moody v. Flowers, supra; nor does it embrace state statutes having only local application or import, even though administered by state officials. Board of Regents v. New Left Education Project, 404 U.S. 541, 92 S. Ct. 652, 30 L.Ed.2d 697 (1972); Rorick v. Board of Commissioners, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939); Cf., Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1934).

In Board of Regents v. New Left Education Project, supra, the Supreme Court held that a three-judge panel was not properly convened to pass upon the constitutionality of a regulation promulgated by the Board of Regents of the University of Texas, regulating the publication of underground newspapers, because the regulation applied to only three of the state's four-year colleges and universities. In Moody v. Flowers, supra, the Court held that a state statute which established a Board of County Commissioners was local in nature and that a three-judge panel was not required to hear a challenge to it on reapportionment grounds, even though similar systems were established for many counties across the state. Finally in Rorick v. Board of Commissioners, supra, the Court held that a three-judge panel was improperly convened to pass on the constitutionality of a state statute affecting changes in taxes on lands in a particular drainage district, even though the officials were designated as state officers. Cf., Gilhool v. Chairman and Commissioners, Philadelphia County Board of Elections, D.C.Pa., 306 F.Supp. 1202 (1969).

■ When tested by these standards it is clear that the statute here in question is one of only local application and concern. The statute applies only to voters in cities of the first class. As the city of Louisville alone falls within this classification, the statute does not have statewide application.[4] Under the

---

4. We are aware of Section 59, subsection 20 of the Kentucky Constitution which prohibits the passage of special or local laws to provide for the conduct of elections. Neither this section nor the determination by a Kentucky court that local election officials are state officials is of significance in determining issues in this case. See Board of Registration Commissioners v. Campbell, 251 Ky. 597, 65 S.W.2d 713, 715 (Ct. of App.1932). Further, the Kentucky Constitution ex-

teaching of *Rorick* and the other cases cited, we hold that the statute is not one within the ambit of 28 U.S.C. § 2281 and that a three-judge panel is not required to pass on its constitutionality.

The district court, however, in our opinion, misapplied the abstention doctrine. In this connection the court stated:

Although it could be argued that a substantial federal constitutional question exists here, the requirement of federal court equity jurisdiction is missing because plaintiffs have failed to exhaust their state court remedies. Moreover no irreparable harm would result from such a course in that the November (1971) General Election is now in the past, and some five months remain before the May (1972) Primary. Whenever such a situation exists, a federal court should invoke the "abstention doctrine" and abstain from passing on the State statute until the State courts have done so.

Abstention is a judicially created doctrine that emerged in Railway Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1940). In that case the Supreme Court held that a federal court in certain narrowly defined "special circumstances" should abstain from exercising equity jurisdiction to enjoin the operation of a state statute. The doctrine was expanded in Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1962), in which the Court was faced with a challenge to a Virginia scheme of regulation of organizations which advocated racial integration or segregation, including expenditure of funds for racial litigation. The Court held abstention proper since a limiting construction could be placed on the state statutes by state courts which would avoid deciding constitutional questions. The Court stated:

The present case, in our view, is one which calls for the application of this [abstention] principle, since we are unable to agree that the terms of these three statutes leave no reasonable room for a construction by the Virginia courts which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem. 360 U.S. at 177, 79 S.Ct. at 1030.

■ The foundation of the doctrine of abstention rests on several policy considerations. The first of these is the avoidance of a premature constitutional decision by a possible narrowing construction of the state law by a state court. Lake Carriers' Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Cf.* Zwickler v. Koota, 389 U.S. 241, 255, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) (Harlan, J., concurring). A second policy reason underpinning the principle is the avoidance of needless conflict in the federal-state relationship. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). A third consideration is the desirability of avoiding the necessity of a federal court making tentative decisions on issues of state law. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). A fourth basic reason justifying abstention is the avoidance of unnecessary interference with state functions or regulatory schemes. Lake Carriers' Association v. MacMullan, *supra*; Younger v. Harris, *supra*.

■ The Supreme Court, however, has made clear that abstention is subject

---

pressly authorizes the General Assembly to classify cities on a population basis for purposes of legislation.

We were informed on oral argument that Lexington has also attained the population of a first class city. The Ken-

tucky Constitution, however, requires affirmative legislative action before Lexington may be so classified despite its actual population growth. Such legislation has not been enacted.

to some notable exceptions. In McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1962), the Court held that abstention is improper if the underlying issue of state law is not controlling in the present litigation, or if the federal right is not "entangled in a skein" of state regulation. In Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1963), the Court again held abstention improper because a single state litigation could not cure the constitutional infirmities of a state loyalty oath challenged on the grounds of vagueness. Furthermore, abstention is improper if its application would require piecemeal adjudication, causing unnecessary delay in the resolution of constitutional questions.[5] England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L. Ed.2d 440 (1963). It has also been held that abstention applies only where the issue of state law is uncertain and relates to questions which only a state court could authoritatively construe. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1970); See Lake Carriers' Association v. MacMullan, *supra*. Abstention should not be applied merely to await an attempt to vindicate the claim of the appellant in state court. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391 (1967). The availability of declaratory relief in state courts is wholly irrelevant.[6] Lake

Carriers' Association v. MacMullan, *supra*.

In *Zwickler* it was stated:

We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum. 389 U.S. at 248, 88 S.Ct. at 395.

*See* also, McNeese v. Board of Education, *supra*, 373 U.S. at 674 fn. 6, 83 S. Ct. 1433. Stapleton v. Mitchell, 60 F. Supp. 51, 55 (D.Kan.1945).

This court also has recently passed on the question of abstention. In Garvin v. Rosenau, 455 F.2d 233 (6th Cir. 1972), we held that abstention was inapplicable to a case involving the exercise of First Amendment rights by a group of high school students who wished to express their opinion concerning the war in Vietnam. The court stated:

The mere fact that a constitutional decision conceivably could be avoided or that federal-state friction might arise does not automatically justify resort to the doctrine [of abstention]. The facts and circumstances of each case must be carefully examined in order to evaluate the policies to be served by abstention. Thus, resort to

---

5. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) perhaps creates another circumstance where abstention is inappropriate. Although this decision has a somewhat checkered history, it was recently cited with approval in Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), for the proposition that a federal court may enjoin a state court proceeding to prevent "great, immediate, and irreparable loss of a person's constitutional rights." 407 U.S. At 242, 92 S.Ct. at 2162. This should, of course, be read in conjuction with Younger v. Harris, 401 U.S. 37 (1971), and its companion cases. Federal court jurisdiction is appropriate in these cases only if the conditions for declaratory or injunctive re-

lief are satisfied. See Lake Carriers' Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Perez v. Ledesma, 401 U.S. 82, 93, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennen, J., concurring in part and dissenting in part).

6. The question of abstention and the relief a successful claimant should be granted are, of course, separate questions. Thus a district court may properly consider whether the claimant will suffer irreparable harm to determine whether an injunction should be granted. This consideration, however, is not germane when considering abstention. *See* Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 103 (1969); Zwickler v. Koota, 389 U.S. 241 (1967).

885

abstention is appropriate only if the narrowly limited countervailing interests are, on balance, more important to the federal constitutional system than a litigant's right to a federal forum. 455 F.2d at 238 (footnotes omitted).

In Jones v. Metzger, 456 F.2d 854 (6th Cir. 1972), this court denied the applicability of abstention in a suit concerning living conditions in a local jail. We held that even if a viable option were available to appellees under state law, it is well-established that when fundamental civil rights are at issue, federal courts should not hesitate to exercise their jurisdiction to protect those rights.

When tested by the standards indicated herein, the district court erred in applying abstention to the present case. Plainly none of the policy considerations stated above requires such restraint. The statute is clear and unambiguous on its face. There are no unsettled questions of state law that might avoid the necessity of passing on the constitutional questions, nor is an uncertain issue of state law controlling of the outcome. The decision on the merits of the appellant's claims would not be aided by an interpretation of the statute by Kentucky state courts. The statute's provisions are not so enmeshed in a comprehensive statutory scheme as to create needless conflict with necessary state functions.[7] Cf. Harrison v. N.A.A.C.P., supra. The district court would not be deciding tentative questions of state law but rather claims based on the federal constitution.[8] The appellant asserts rights guaranteed by the Fourteenth and Nineteenth Amendments, alleging that her right to vote has been abridged because of her sex. While we express no views as to the merits of her claim, she is clearly entitled to a federal forum in which to assert those rights.[9] A federal court may not simply disregard a constitutional challenge by invoking abstention, even though a remedy may also lie in state courts. In addition, the appellant lost her right to vote in one election, and other elections are fast approaching. She should not be further delayed in seeking a resolution of her constitutional challenge.

Because the action was improperly dismissed, the judgment of the district court is reversed and the action is remanded for consideration of the merits of the complaint without convening a three-judge court.

Reversed and remanded.

7. This court has rejected the easing of federal court dockets as a proper basis for abstention. See, e. g., Garvin v. Rosenau, 455 F.2d 233, 6th Cir. 1972.

8. Decisions such as Younger v. Harris, supra, note 5, and its companion cases have little effect here, since they deal with circumstances when a federal court may enjoin a state criminal prosecution or civil action. These decisions, based primarily on comity, have "little force in the absence of a pending state proceeding." Lake Carriers' Association v. MacMullan,

406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

9. The district court would have the appellant "exhaust" her state court remedies before seeking relief in federal court. In actions based on federal constitutional questions the requirement of exhaustion of state remedies has been consistently rejected. See McNeese v. Board of Education, 373 U.S. 668 (1962); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).