MUSKEGON THEATRES, INC., a Michigan corporation, Plaintiff-Appellant,

v.

CITY OF MUSKEGON, a Municipal Corporation, and the Amazon Company, a Michigan corporation, Defendants-Appellees.

No. 74–1447.

United States Court of Appeals, Sixth Circuit.

Dec. 5, 1974.

Alexis J. Rogoski, R. Bunker Rogoski, Muskegon, Mich., for plaintiff-appellant.

Thomas J. O'Toole, James J. Kobza, George A. Parmenter, John M. Briggs, III, Muskegon, Mich., for defendants-appellees.

Before CELEBREZZE, PECK and MILLER, Circuit Judges.

JOHN W. PECK, Circuit Judge.

On September 28, 1972, plaintiff-appellant ("appellant") filed in federal district court a complaint alleging that defendant-appellee city ("City"), through certain urban renewal activities from 1966 to 1971, had "taken" its leasehold interest. Because appellant's lessor ("lessor") refused to join as co-plaintiff, appellant joined lessor as co-defendant. On June 1, 1973, City filed its declaration of taking in Muskegon County circuit court. On June 13, 1973, appellant filed in federal district court an amended and supplemental complaint realleging the "taking" to have been without just compensation and alleging that City delayed in filing its state court condemnation proceedings in order to obtain a lower appraisal of appellant's interest.[1] On September 28, 1973, the district judge dismissed appellant's original complaint because allegations of lost profits and depreciated property value stemming from surrounding urban renewal failed to state a "taking" in the constitutional sense. On November 7, 1973, appellant, City, and lessor stipulated that title to the realty would vest in City, that City would pay into federal district court its estimate of just compensation, and that City would dismiss without prejudice its declaration of taking in state court. The parties reserved the right to prove the date of "taking" for valuation purposes.

On February 26, 1974, the district judge refused to accept the parties' stipulation, characterizing it as "transfer[ring] the entire litigation, except so much as has been agreed to, from the Muskegon Circuit Court to this court for final disposition and . . . stipulat[ing] that this court has jurisdiction without an admission of same or a specific finding thereof by this court." The judge found that federal-state comity dictates that parties cannot, by stipulation, remove state court proceedings to federal court; moreover, he found that he was unable to say that the state courts would fail to afford appellant its constitutional rights.

Appellant appeals the district court's *sua sponte* dismissal of its amended and supplemental complaint. We hold that the district court had power to abstain from exercising jurisdiction, but should have retained jurisdiction pending state court proceedings.

█ Of course, parties cannot stipulate the subject matter jurisdiction of federal courts. Arenas v. United States, 95 F.Supp. 962, 972 (S.D.Cal.1951), aff'd, 197 F.2d 418 (9th Cir. 1952). See United States v. Anderson, 503 F.2d 420 (6th Cir. 1974), Mill Owners Mut. Fire Ins. Co. v. Kelly, 141 F.2d 763, 766 n. 1 (8th Cir. 1944), Commonwealth ex rel. Woods v. Cavell, 157 F.Supp. 272, 276–277 (W.D. Pa.1957), aff'd, 254 F.2d 816 (3rd Cir. 1958). But an alleged "taking" in violation of the Fifth and Fourteenth Amendments presents a "serious constitutional question," Foster v. Herley, 330 F.2d 87 (6th Cir. 1964), Eleopoulos v. Richmond Development Agency, 351 F.Supp. 63, 64 (N.D.Cal.1972), clearly within the district court's "federal question jurisdiction." 28 U.S.C. § 1331 (1970).[2]

1. The amended and supplemental complaint, as a pendent claim, alleged that the "taking" terminated appellant's obligation to pay rent to lessor. Appellant and lessor both being Michigan corporations, there was no independent diversity jurisdiction over that claim. 28 U.S.C. § 1332(c) (1970).

2. Neither Sayre v. City of Cleveland, 493 F.2d 64 (6th Cir.), cert. denied, —— U.S. ——, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974), nor Wood-

land Market Realty Co. v. City of Cleveland, 426 F.2d 955 (6th Cir. 1970), found that such an alleged "taking" would be insufficient to invoke the federal question jurisdiction of the federal district court. In fact, both cases involved the propriety of granting or denying summary judgment. Such granting or denying is proper only if the district court had jurisdiction.

■ Even so, the district court could abstain from exercising such jurisdiction. Even if City's entering into the stipulation is deemed as waiving City's motion to dismiss for abstention reasons, the district court still properly raised the abstention issue because the propriety of a district court's raising abstention *sua sponte* is well-settled. Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); Empire Pictures Distributing Co. v. City of Fort Worth, 273 F.2d 529 (5th Cir. 1960); Mitchell Family Planning, Inc. v. City of Royal Oak, 335 F.Supp. 738, 740 (E.D.Mich.1972).

Recently, this court[3] and the Supreme Court[4] have focused on "the oft-mentioned, but seldom fully understood, issue of abstention."[5] Though abstention, being an equitable doctrine, often turns on case-by-case facts,[6] courts generally have recognized the purposes of abstention as including the avoidance of premature and unnecessary decisions of federal constitutional law[7] and of "any [unnecessary] possible irritant[s] in the federal-state relationship." Reetz v. Bozanich, 397 U.S. 82, 87, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970).

The Supreme Court several times has dealt with abstention in eminent domain[8] contexts. Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959), rev'g 160 F.Supp. 404 (W.D.Pa. 1958), is the closest to being on-point because it, like the instant complaint, invoked the district court's federal question jurisdiction.[9] In *Martin*, plaintiffs claimed that a state statute unconstitutionally limited compensable "takings." Though the district court originally stayed its exercise of jurisdiction pend-

---

**3.** Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153, 169–170 (6th Cir. 1973); Gay v. Board of Registration Comm'rs, 466 F.2d 879 (6th Cir. 1972); Jones v. Metzger, 456 F.2d 854 (6th Cir. 1972); Garvin v. Rosenau, 455 F.2d 233 (6th Cir. 1972).

**4.** Prounier v. Martinez, 416 U.S. 396, 400–404, 94 S.Ct. 396, 40 L.Ed.2d 224 (1974); Kusper v. Pontikes, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). *Askew* and *Reetz* have been characterized as expanding the scope of abstention. Reid v. Board of Educ., 453 F.2d 238, 242 (2d Cir. 1971).

**5.** Pennsylvania Ass'n for Retarded Children v. Commonwealth, 343 F.Supp. 279, 290 (E.D. Pa.1972). See Crawford v. Courtney, 451 F.2d 489, 491 (4th Cir. 1971); Note, Judicial Abstention from the Exercise of Federal Court Jurisdiction, 59 Colum.L.Rev. 749, 750 (1959); Comment, The Need for More Definitive Standards in Employment of Federal Court Abstention, 1969 Utah L.Rev. 196.

**6.** Abstention has been characterized as a matter of discretion. Zwickler v. Koota, 389 U.S. 241, 245, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153, 170 (6th Cir. 1973); Foster v. City of Detroit, 405 F.2d 138, 145 (6th Cir. 1968);

Pell, Abstention—a Primrose Path by Any Other Name, 21 DePaul L.Rev. 926, 933–34 (1972).

**7.** The policy of avoiding unnecessarily deciding federal constitutional issues, in fact, predates the Pullman abstention doctrine formulated in Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). See Siler v. Louisville & N. R.R., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909); Note, Judicial Abstention from the Exercise of Federal Jurisdiction, 59 Colum.L.Rev. 749, 752 (1959).

**8.** Eminent domain, for purposes of this opinion, includes allegations of unconstitutional "takings," or inverse condemnation.

**9.** Kaiser Steel Corp. v. W. S. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968), County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), and Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), invoked the district court's diversity jurisdiction. The rationale for federal court abstention from exercising federal question jurisdiction differs from the rationale for abstention from exercising diversity jurisdiction. Abstaining from exercising federal question jurisdiction avoids often unnecessarily deciding federal constitutional issues; abstaining from diversity jurisdiction avoids federal "guesswork" of the meaning of an unclear and unconstrued state law. Alabama Public Serv. Comm'n v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), which invoked diversity

ing plaintiffs' resort to state courts,[10] it later exercised its jurisdiction because of its view that continuing its stay would irreparably harm plaintiffs. The Supreme Court found that such exercise was error.

"The circumstances which should impel a federal court to abstain from blocking the exercise by state officials of their appropriate functions are present here in a marked degree. . . . Reflected among the concerns which have traditionally counseled a federal court to stay its ⸝hand are the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions. All those factors are present here." 360 U.S. at 224, 79 S.Ct. at 1037 [citations omitted].

Perhaps with a view toward federal judicial economy, the Court found an "additional reason" for abstention in the statute's varying impact on different landowners.

"Some [landowners] may be completely deprived of access; others may have access to existing roads or service roads to be constructed; still others may have access to the highway itself through points of ingress and egress established under the statute. In the state court proceedings the case of each landowner will be considered separately, with whatever particular problems each case may present." 360 U.S. at 224–225, 79 S.Ct. at 1037.

■ In several reported opinions,[11] courts have abstained from exercising

10. Creasy v. Lawler, 389 Pa. 635, 133 A.2d 178 (1957), refused to judicially declare a right to compensation because plaintiffs had an adequate remedy at law in a statutorily prescribed proceeding before viewers with appeal through the state judicial system.

11. Unfortunately, none are factually on-point with the instant claim. Hill v. Victoria County Drainage District No. 3, 441 F.2d 416 (5th Cir. 1971), also involved a claim that a state statute was unconstitutional. Plaintiffs in Luedtke v. County of Milwaukee, 371 F.Supp. 1040 (E.D.Wis.1974), had also filed a state

their federal question jurisdiction in eminent domain contexts. In Creel v. City of Atlanta, 399 F.2d 777 (5th Cir. 1968), the court of appeals found that the district court should have abstained from deciding plaintiffs' claim that the city had "taken" their property in violation of the federal constitution. Though the city in *Creel* had filed an action in state court to condemn such property, Hohensee v. State of Pennsylvania Dep't of Highways, 383 F.2d 784 (3rd Cir. 1967), as well as *Martin, supra*, makes it clear that the lack of a pending state court condemnation action creates no preclusion to abstention. Accord, Elterich v. City of Sea Isle City, 477 F.2d 289 (3rd Cir. 1973); see Comment, The Need for More Definitive Standards in Employment of Federal Court Abstention, 1969 Utah L.Rev. 196, 205–207; cf. Peace v. City of Center, 372 F.2d 649 (5th Cir. 1967). Contra Eleopoulos v. Richmond Development Agency, 351 F.Supp. 63 (N.D.Cal.1972).

Some federal courts, of course, have exercised their jurisdiction in eminent domain contexts.[12] Ballard Fish & Oyster Co. v. Glaser Const. Co., 424 F.2d 473 (4th Cir. 1970), rejected a contention that plaintiff initially "should be required to seek a remedy in the state courts under Virginia's constitutional prohibition against taking property for a public use without just compensation." The court of appeals found that plaintiffs must resort to state judicial remedies only in "exceptional circumstances." *Ballard*, though, termed the issue exhaustion[13] rather than abstention. Moreover, public service corporations with delegated

and federal question jurisdiction, abstained in deference to state regulatory procedures.

court claim. Though Jim Young Development Corp. v. State Highway Comm'n, 56 F.R.D. 38 (W.D.Mo.1971), favored abstention, it failed to order it, pending a determination of the adequacy of the state remedy. Similarly, the pro-abstention pronouncement in City of Boston v. Massachusetts Port Auth., 444 F.2d 167 (1st Cir.), aff'g 320 F.Supp. 1317 (D.Mass.1971), was dictum.

12. See cases cited in County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 194, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

13. Generally, there is no need to exhaust state judicial remedies. C. Wright, Law of Federal Courts 187 (1970).

eminent domain powers, rather than municipalities, were involved in *Ballard*.

■ Town of East Haven v. Eastern Airlines, Inc., 282 F.Supp. 507 (D.Conn. 1968), Eleopoulos v. Richmond Development Agency, 351 F.Supp. 63 (N.D.Cal. 1972), and Joiner v. City of Dallas, 380 F.Supp. 754 (N.D.Tex.1974), explicitly rejected abstention claims. *Eleopoulos*, of course, is easily distinguishable in that there, as in *Foster, infra*, the state remedy became adequate only after the filing of the federal complaint. *Joiner* involved only federal claims, 380 F.Supp. at 761, and, moreover, failed to even cite, much less distinguish, *Creel* which the *Joiner* court's court of appeals decided just six years earlier. In *East Haven*, certain property owners claimed, *inter alia*, that a municipally-operated airport had "taken" their property without just compensation in violation of the Fourteenth Amendment's due process clause. The city, claiming that such would also violate state law, including the state constitution, argued that the property owners had to seek redress initially in state court. The district court, relying on Mosher v. City of Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148 (1932), rejected the city's claim. The district court recognized the validity of *Martin,* but found *Martin* inapplicable because

"the circumstances which would merit abstention are not present in the instant action. The constitutional question is not a novel one, . . . and the activities from which the plaintiffs seek relief have already occurred. Furthermore, a state statute is not under attack and the state courts have not, as they had in Martin, signified in

a related action that relief [would] be granted." 282 F.Supp. at 516.

We decline to follow *East Haven* for several reasons. First, *East Haven* also involved independent federally- and diversity-based claims against certain airlines, cf. footnote 1, *supra*, as to which the district court had no right to abstain. Consequently, the district court, in exercising the equitable doctrine of abstention, could properly consider that abstaining as to the city would fail to foster judicial economy. Second, we feel that the district court relied too heavily on *Mosher*, which predates *Pullman* [14] and *Martin*. Though neither *Pullman* nor *Martin* explicitly overruled *Mosher, Martin*, of course, favors a federal court "stay[ing] its hand" in order to avoid unnecessarily deciding federal constitutional issues and unnecessarily irritating federal-state relationships. The Supreme Court, particularly in the 1970s, has favored such policies.[15] Moreover, *Mosher* itself exclusively dealt with federal jurisdiction rather than abstention.[16] Third, the fact that the *East Haven* activities, like the instant ones, had already occurred, we feel, arguably favors federal abstention because a delay in exercising federal jurisdiction is less likely to irreparably harm the party asserting federal jurisdiction; the harm, where the underlying actions have occurred, has already been done. See Martin v. Creasy, 360 U.S. 219, 223, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959). Fourth, though the instant complaint fails to involve a narrow claim of statutory invalidity like *Martin*, the complaint alleges that the result of the city ordinance [17] and enabling statute [18] is an unconstitutional

**14.** The Supreme Court, if not commentators, has characterized Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), as "first fashion[ing] . . . the judge-made doctrine of abstention." Compare Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967) with C. Wright, Law of Federal Courts 197 (1970).

**15.** See footnote 4, *supra*.

**16.** *East Haven*, in fact, was the first time *Mosher* has been cited in reference to abstention. Generally, *Mosher* has been cited for

the proposition that well-pleaded allegations, rather than later evidence, determine the existence of federal jurisdiction. E. g., Levering & Garringues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062 (1933).

**17.** City adopted an urban renewal ordinance on October 8, 1968.

**18.** The record fails to show what enabling statute underlay City's urban renewal activities. The enabling statute could have been the blighted area rehabilitation act, Mich. Comp.Laws Ann. § 125.71 et seq. (1967); Mich.Stat.Ann. § 5.3501 et seq. (1969).

"taking." Though abstention generally has been invoked where there is a claim of an unconstitutional statute, we feel abstention is just as properly invoked in the instant case where the claim is that the legislative enactments have resulted in unconstitutional state action because, in either event, a state court determination of the state issues could avoid an unnecessary and premature decision of the federal constitutional issues.

■ *Pullman*[19] abstention applies only where the party invoking federal court jurisdiction has state and federal claims so that

> "[i]f the statute is struck down under [state law], resolution of the federal constitutional issue would, of course, be avoided. . . . [A] federal court should abstain from deciding the constitutionality of a state statute if that statute is attacked on alternative state law grounds and decision of the state law question might obviate the need for decision of the federal question." Hill v. Brinegar, 371 F.Supp. 1166, 1170 (D.Del.1974) (citing Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), and Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970)).

Appellant's amended and supplemental complaint, however, claims only that City has "taken" its leasehold in violation of the federal constitution. The failure to explicitly claim that the "taking" violated state statutory and constitutional law, however, is immaterial because, as the Second Circuit has recognized,

> "[i]t is no answer to the contention that the district court should have abstained, that appellants did not raise their state claims in their complaint. Appellants cannot be allowed to frustrate the policies underlying the doctrine of abstention by this simple ex-

pedient." Reid v. Board of Educ., 453 F.2d 238, 242 n. 7 (2d Cir. 1971). Moreover, appellant's brief demonstrates that it has state claims.

> "The Constitution and laws of the State of Michigan have always provided that private property may not be taken for public use without due process of law and compensation. A crucial question involved in the implementation of such provisions has been, when is property actually 'taken'? The Michigan Supreme Court has been committed to a liberal interpretation of 'taking.'" Appellant's Brief at 11.

Indeed, the authority appellant cites for the proposition that City's urban renewal activities amounted to an unconstitutional "taking" belies its claim in its complaint that it was asserting a claim that such activities violated the federal constitution. Of eight cases cited, six were Michigan state court cases.

Traditionally, the party asserting abstention has had to tread a narrow path by demonstrating that resort to state proceedings would be meaningful, Foster v. City of Detroit, 405 F.2d 138, 141 (6th Cir. 1968), Jim Young Development Corp. v. State Highway Comm'n, 56 F.R.D. 38 (W.D.Mo.1971), cf. McNeese v. Board of Educ., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), yet that the state law issue involved is "unclear." Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Government & Civic Employees Organizing Comm., CIO v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957); Gay v. Board of Registration Comm'rs, 466 F.2d 879 (6th Cir. 1972); Note, Judicial Abstention from the Exercise of Federal Jurisdiction, 59 Colum.L. Rev. 749, 756–757 (1959). Appellant's brief and Michigan case law, e. g., Tamulion v. State Waterways Comm'n, 50

**19.** Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), has been characterized as the leading case supporting that branch of the abstention doctrine favoring abstention where state action is challenged as contrary to the federal constitution and possibly dispositive state law. Of four types of recognized abstention, *Pullman* abstention undoubtedly is the best settled. C. Wright, Law of Federal Courts 197–205 (1970); accord, Comment, The Need for More Definitive Standards in Employment of Federal Court Abstention, 1969 Utah L.Rev. 196, 197.

Mich.App. 60, 212 N.W.2d 828 (1973), conclusively demonstrate that resort to state proceedings would hardly be futile or lacking adequacy.[20] Yet appellant has cited us no authority, and we have found none, holding that City's urban renewal activities clearly constituted a "taking" of its leasehold. Though somewhat similar, In Re Urban Renewal, Elmwood Park Project, 376 Mich. 311, 136 N.W.2d 896 (1965), involved somewhat different activities which were found to have constituted a "taking."

Neither the *Foster* series[21] nor Cheatham v. Carter County, 363 F.2d 582, 4 A.L.R.Fed. 226 (6th Cir. 1966), requires that the district court exercise its jurisdiction. This court specifically recognized that, at the filing of plaintiffs' inverse condemnation complaint in *Foster*,

> "Michigan had not by statute or clear decisional announcement provided a remedy whereby to compensate property owners for damages consequent upon the long pendency of an ultimately-discontinued condemnation proceeding." 405 F.2d at 141.

One federal district court has recognized "the unmistakeable implication [that *Foster*] might have been dismissed under the doctrine of abstention had Michigan provided appropriate remedies in 1960 when the action was commenced." Jim Young Development Corp. v. State Highway Comm'n, 56 F.R.D. 38, 43 (W.D.Mo. 1971). *Cheatham* invoked diversity jurisdiction, failed to address abstention issues, and was decided in the mid-1960s when the scope of abstention may have been somewhat narrower than today. Reid v. Board of Educ., 453 F.2d 238, 241–242 (2d Cir. 1971).

Though federal court congestion alone, of course, is insufficient to require abstention, Weiss v. Doyle, 178 F.Supp. 566, 570 (S.D.N.Y.1959), this court, like the district court in its instant decision and the Supreme Court implicitly in *Martin*, is cognizant that "there is the possibility of a federal question in every taking by eminent domain under state authority." Nichols, Law of Eminent Domain § 4.13(2) (1973).[22] Because of that possibility, district courts should be aware of the role of abstention in avoiding prematurely and unnecessarily deciding federal constitutional questions. Cf. Jones v. Branigan, 433 F.2d 576 (6th Cir. 1970), cert. denied, 401 U.S. 977, 91 S.Ct. 1205, 20 L.Ed.2d 327 (1971).

Though the district court's dismissal without prejudice arguably would not harm appellant, Hill v. Victoria County Drainage District No. 3, 441 F.2d 416 (5th Cir. 1971), the "better practice," Zwickler v. Koota, 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), and the "proper course," American Trial Lawyers Ass'n v. New Jersey Supreme Court, 409 U.S. 467, 469, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973), is for the district court to retain jurisdiction pending the state court proceedings. In such instance, the district court, upon state court disposition of appellant's state claims, will be an available forum for the airing of appellant's federal claims (assuming appellant has properly preserved those claims). See England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Government & Civic Employees Organizing Comm., CIO v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957).

Accordingly, we vacate the judgment of the district court and remand the case for proceedings consistent with this opinion.

So ordered.

---

20. Of course, the adequacy in itself of state proceedings is insufficient to require district court abstention. Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Foster v. City of Detroit, 405 F.2d 138, 145 (6th Cir. 1968).

21. Foster v. Herley, 330 F.2d 87 (6th Cir. 1964), rev'g 207 F.Supp. 71 (E.D.Mich.1962); Foster v. City of Detroit, 405 F.2d 138 (6th Cir. 1968), aff'g 254 F.Supp. 655 (E.D.Mich. 1966).

22. One federal appellate judge has implied that the existence of federal constitutional issues in "almost every state criminal prosecution" contributed to the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Hufstedler, Comity and the Constitution: the Changing Role of the Federal Judiciary, 47 N.Y.U.L.Rev. 841, 866 (1972).