840 F.2d 16
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CONTINENTAL CABLEVISION OF MICHIGAN, INC. d/b/a Continental
Cablevision of Lansing, A Michigan Corporation,
and David Schaberg, Plaintiffs-Appellees,
v.
EDWARD ROSE REALTY, INC., A Michigan Corporation and Edward
Rose Associates, Inc. d/b/a Flint Building
Company, Inc., A Michigan Corporation,
Defendants-Appellants.
 No. 87-2001.
 United States Court of Appeals, Sixth Circuit.
 Feb. 17, 1988.
 
 Before ENGEL, CORNELIA G. KENNEDY and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The issue presented on appeal is whether Judge Robert Holmes Bell of the United States District Court for the Western District of Michigan abused his discretion in granting preliminary injunctive relief to plaintiff Continental Cablevision of Michigan ("Continental") forbidding defendant Edward Rose Realty ("Rose") from interfering with Continental's existing cable service to Rose's apartment tenants.
 
 
 2
 The facts of this case are basically undisputed. Flint Building Corp. (Rose's predecessor in interest) and Continental signed a seven year contract on August 1, 1980. This agreement gave Continental the exclusive right to provide cable television service to Flint's Waverly Park apartment complex in Lansing, Michigan. Continental signed a similar agreement with Rose on August 18, 1980 regarding the Trappers Cove apartment complex. Continental, a validly licensed cable television company, was given the right to install, own and maintain cable equipment on both premises. The agreement further provided that it would automatically be renewed for one year terms, if notice was not given more than three months prior to its expiration. The parties also agreed that at the time the contract terminated Continental would either abandon its equipment or the apartment complexes would pay a fair price for it.
 
 
 3
 On December 23, 1986, Rose gave notice of his intent to cancel the agreements effective June 30, 1987. The parties later agreed to extend the contracts until September 30, 1987. Then, on June 1, 1987, the City Counsel of Lansing passed Ordinance 753, amending existing Lansing cable television regulations. The ordinance provides that owners of multiple-unit dwellings may not "directly or indirectly prohibit any resident of such dwelling from receiving cable communication installation, maintenance and services from a Grantee operating under a valid franchise issued by the city." The Ordinance went on to describe the remedy for such violation:
 
 
 4
 If the owner ... of any dwelling refuses directly or indirectly to permit any resident of such building from receiving cable communication service installation, maintenance and service from a Grantee operating under a valid franchise issued by the City, the City upon request of the grantee may commence condemnation proceedings in accordance with applicable law.[1]
 
 
 5
 On June 11, 1987, pursuant to Ordinance 753, Continental requested that the City Counsel institute condemnation proceedings against Rose. The City responded by passing Resolution 446 on August 31, 1987 which provided, in part:
 
 
 6
 The City Council deems multi-channel CATV service to Trappers Cover [sic ] and Waverly Park to be in the public interest, and to constitute both a public use and a public purpose....
 
 
 7
 The City of Lansing is hereby authorized to retain an appraiser to determine the fair market value of the space occupied by Continental Cablevision's cable and related facilities at the Trappers Cove and Waverly Park apartment complexes, thereafter make an offer to purchase such space consistent with its fair market value, and take such steps as necessary to acquire such space consistent with the Ordinance.
 
 
 8
 Meanwhile, on July 22, 1987, prior to the promulgation of Resolution 446, Continental brought suit in the Circuit Court for the County of Ingham, Michigan. Continental sought, among other things, a preliminary injunction against Rose, forbidding Rose from interfering with Continental's business. Continental was joined as plaintiff by David Shaberg, a tenant of Waverly Park and a subscriber to Continental cable TV service. Continental obtained an order to show cause and a hearing was set for August 31, 1987.
 
 
 9
 Prior to that hearing, on August 20, 1987, Rose filed a petition for removal, stating:
 
 
 10
 The civil action filed by Plaintiffs is founded on a claim or right arising under the Constitution, treaties or laws of the United States, including the First Amendment of the United States Constitution, the Cable Communications Policy Act of 1984, and the Federal Communications Act of 1934, and is removable to this Court pursuant to 28 USC 1441(b).
 
 
 11
 No petition to remand was filed.
 
 
 12
 On September 23, 1987, a hearing was held on the plaintiff's application for a preliminary injunction. The district judge reviewed the considerations involved in deciding whether to grant a preliminary injunction. He stated:
 
 
 13
 The Court finds that irreparable harm is tied to the concept of maintaining the status quo as it currently exists, that City of Lansing Ordinance No. 753 ("Ordinance") is entitled to a presumption of validity under the law of the State of Michigan, that Plaintiffs at this time will sustain irreparable harm from Defendants' violation of the Ordinance; thus this factor weighs in favor of Plaintiffs.
 
 
 14
 The Court finds, although a difficult factor to assess, that Plaintiffs may succeed on the merits and that this factor is evenly balanced between Plaintiffs and Defendants.
 
 
 15
 The Court further finds in balancing the harm that the harm is greatest to the Plaintiffs, which harm extends beyond the price of the cable facilities and concerns the nature and validity of both the franchise and the Ordinance, and this factor weighs in favor of the Plaintiffs.
 
 
 16
 Further, the Court determines that the public interest would be served by the issuance of a preliminary injunction.
 
 
 17
 Judge Bell then issued a preliminary injunction.[2]
 
 
 18
 We note at the outset the existence of a substantial question concerning the subject matter jurisdiction of the district court to which this litigation was removed by appellant pursuant to 28 U.S.C. Sec. 1441(b) from the Circuit Court for the County of Ingham. No objection has been raised either in the district court or before us to the removal nor has a petition for remand been filed. However, the fact that removal was uncontested does not preclude the questioning of its validity. It is well established that parties may not by stipulation confer upon a district court that subject matter jurisdiction which the law says it does not possess. Muskegon Theaters, Inc. v. City of Muskegon, 507 F.2d 199 (6th Cir.1974). District courts have an independent obligation to ascertain the existence of their own subject matter jurisdiction. Fed.R.Civ.Pro. 12(h)(3). Such questions are best resolved at an early stage of the trial and are usually made the subject of a petition for remand.[3]
 
 
 19
 We believe it is well established that a bare assertion of First Amendment rights is not always sufficient to support a removal from a state court in which proceedings have been commenced. The question of federal subject matter jurisdiction is to be garnered from the four corners of the well pleaded facts in the state complaint. The Supreme Court has held that a First Amendment claim will not form an adequate basis for jurisdiction if "the cause of action alleged is so patently without merit as to justify ... the court's dismissal." Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 70 (1978) (quoting Hagans v. Lavine, 415 U.S. 528, 542-43 (1974)). While we do not decide this question, we believe that it is quite possible that the claims raised in the instant action fail to meet the Duke Power standard. The constitutional claims are made only as a collateral matter to the exercise of state property rights. Further, it is unclear whether the constitutional allegations involve either state action or a public forum.
 
 
 20
 Citation has also been made throughout the course of these proceedings to the Cable Communication Policy Act of 1984, Pub.L. 98-549, 98 Stat. 2780 (Codified at 47 U.S.C. Secs. 521-529 (Supp. IV 1985)). While it is true that private rights of action in the United States District Courts are provided for specifically by that Act in sections 532(d) and 555, neither of these provisions is relevant to the instant action.[4] Further, both the briefs and pleadings of the parties and their oral arguments before us show that both parties are relying upon their respective rights under the contracts and upon their relative rights under Ordinance 753. No party has asserted that the ordinance, when construed in light of the state condemnation law incorporated within it, violates the constitutional rights of either party or is invalid under either the federal or state constitution. Instead, the parties question the construction of the ordinance and whether its application here may have worked a deprivation of property without due process or an inhibition of the First Amendment rights of either party.
 
 
 21
 The law concerning whether a given federal statute creates a private right of action continues to develop. Recent Supreme Court precedent indicates that the crucial element to be used in determining whether such rights exist is Congressional intent, Thompson v. Thompson, 56 U.S.L.W. 4055, 4057 (U.S. Jan. 12, 1988); California v. Sierra Club, 451 U.S. 287 (1981). In writing the Cable Act, Congress provided for a private remedy in those circumstances where the interests of the federal government in what is essentially a joint federal/state scheme, appear to have been significant. This statutory scheme leaves us with serious doubt as to whether, under current judicial interpretations and the facts of this case, this situation is one over which Congress intended the federal district courts to have subject matter jurisdiction.[5]
 
 
 22
 We further note that those claims of deprivation of property interests without due process which affect every condemnation proceeding, whether state or federal, do not always confer exclusive jurisdiction upon the federal courts. There was authority in our Circuit that where the sufficiency of state condemnation proceedings was sought to be litigated in state court, it was proper for the United States District Court to enter an order of abstention while retaining jurisdiction, see e.g. Muskegon Theaters, Inc., 507 F.2d at 203-204. The Supreme Court has stated that when conflicts involve traditional questions of state law, they ought normally to be resolved within the state courts even though they may also implicate federally protected constitutional rights. In Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), the Supreme Court recognized that most challenges to the constitutionality of state condemnation proceedings, and, we presume, condemnation actions by local governments acting under authority of state law, ought in the first instance to be resolved through the state's condemnation appeal procedures. Id. at 186. Thus, the Court held that a district court should, without prejudice, dismiss, as premature, any actions instituted that raise those issues in the federal court. Here, where there has been a removal from the state court, the proper course for the district court, if it should conclude that it was without subject matter jurisdiction, would be an order of remand to the Ingham County Circuit Court from which this litigation came.[6]
 
 
 23
 Neither the district court nor the parties on appeal have addressed these issues. Further, we have not explored this matter with the depth and probity necessary to enable us to make a binding decision on this important question. It is the better part of wisdom in our judgment, therefore, to remand this case to the district court with instructions to hold the appropriate hearing and make the appropriate findings. Thus, we return this case to the district court in all respects and do not pass upon any right or obligation of the district court to allow the parties to amend the jurisdictional charges. We also do not decide whether subject matter jurisdiction is conferred by the language of the complaint or by the Cable Act itself, other than to caution the parties that close attention should be given to what may be the limited nature of the federal jurisdiction specifically conferred by the statute.
 
 
 24
 The matter immediately before us, of course, is whether the district court abused its discretion in granting a preliminary injunction. If the district court had subject matter jurisdiction, we conclude upon an examination of the record that the court did not abuse its discretion in granting preliminary injunctive relief. The court gave careful attention to compliance with the requirements of Fed.R.Civ.P. 65, including its requirement of a bond, the amount of which has not been challenged here. That the court has not endeavored to forecast the ultimate outcome of this case on the merits does not preclude injunctive relief, so long as the issue presented is substantial and a weighing of the other Rule 65 elements in conjunction with that one indicates the wisdom of the grant of such relief. Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100 (6th Cir.1982). This decision rested in the good judgment of the district court which we cannot hold was abused here. In any event, the maintenance of the status quo (or status quo ante, if appellees' construction of the contract is correct) is sustainable, at least until the district court makes the necessary determination concerning its own subject matter jurisdiction.[7]
 
 
 25
 Accordingly the judgment of the district court is AFFIRMED and the cause is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Michigan has adopted the Uniform Condemnation Procedures Act, Mich.Comp.Laws Ann. Secs. 213.51 et seq. The law provides the standards necessary for an acquisition of property, the procedures necessary to complete a condemnation action and the criteria used when determining just compensation. The law further provides for a process of hearings and appeals by aggrieved parties
 
 
 [2]
 The injunction was granted for 120 days and that time may expire before this ruling is issued. Nonetheless, we were informed at oral argument that if we uphold the preliminary injunction the district court will hold a hearing to decide whether to continue it. Therefore, we have, as of this writing, current jurisdiction over a currently effective order and, even if the instant order expires, we may still resolve this question due to the likelihood of its recurrence. Further, the appellee claims that the injunction was wrongfully issued and that it is entitled to damages. While this question could await the final resolution of the lawsuit, this fact is not a basis for refusing to decide this case because of mootness
 
 
 [3]
 Of course under 28 U.S.C. Sec. 1447(d) an order of remand is specifically not made appealable except under the narrow circumstances, not applicable here, set forth in Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336 (1976)
 
 
 [4]
 47 U.S.C. Sec. 532 allows aggrieved individuals to sue a cable operator for failing to make commercial channel capacity available. 47 U.S.C. Sec. 555 permits a cable operator to bring an action challenging the final decision of a franchising authority relating to renewal or modification of the franchise agreement
 
 
 [5]
 So far as we can ascertain, there is no diversity of citizenship involved
 
 
 [6]
 See 28 U.S.C. Sec. 1447(c) which provides:
 If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. The State court may thereupon proceed with such case.
 
 
 [7]
 It is clearly established that district courts have jurisdiction to determine their own jurisdiction. See, e.g., United States v. United Mine Workers of America, 330 U.S. 258, 291 (1947); Fireman's Fund Insurance Co. v. Railway Express Agency, 253 F.2d 780, 784 (6th Cir.1958). Further, courts have the authority to issue preliminary injunctions and other orders in order to maintain the status quo while they are inquiring into whether they have jurisdiction. See, e.g., United Mine Workers, 330 U.S. at 290; Roth v. Bank of the Commonwealth, 583 F.2d 527 (6th Cir.1978); American Federation of Musicians v. Stein, 213 F.2d 679 (6th Cir.1954). When resolving the jurisdiction question, a court may take limited proofs. See, e.g., Land v. Dollar, 330 U.S. 731 (1947); Redman v. C.I.R., 820 F.2d 209 (6th Cir.1987). However, the facts presented in such a hearing are only relevant for the jurisdictional issue; they do not go to the merits of the case. See, e.g., Roger v. Stratton Industries, 798 F.2d 913 (6th Cir.1986); Fireman's Fund Insurance Co., 253 F.2d at 784